Oder v. The Commonwealth.

CASE 7—INDICTMENT—JANUARY 22, 1882.

# Oder v. The Commonwealth.

APPEAL FROM HARRISON CIRCUIT COURT.

1. When a person has been merely threatened by even the most lawless character, it is no excuse for taking his life; but when a person has been threatened, waylaid, menaced, and assaulted with a deadly weapon, and he afterwards casually meets his foe, if from the character, antecedent conduct, and the circumstances of the meeting, and the presence of his enemy, he believes, and has reasonable grounds to believe, judging thereof for himself, but at his peril, that his foe is about to inflict upon him loss of life, or great bodily harm, or will then and there carry into execution a design to kill him, or do him such harm, unless prevented, he is not bound to wait until actually assaulted, but may use such force as is necessary to avert the impending danger.

2. It is always a question for the jury to determine the reasonableness of the apprehended danger, and the actual belief of its existence by the person imperiled.

3. A person may leave his home to transact his legitimate business, and while so engaged, having reasonable grounds to believe, and in good faith believing, that he had been threatened, waylaid, and assailed with a deadly weapon, he has the right to carry arms openly, and to keep a lookout for his enemy, or procure information as to his movements in good faith, and only for the purpose of guarding himself from surprise, and if a meeting casually occurs, then the law of self-defense applies in the same manner as indicated.

4. But in no state of case is a person allowed to hunt down or seek another for the purpose of killing him.

5. No agreement of counsel will authorize an amendment of the record.

6. Appellant's objection to proof of what Conrad did, in his absence, was properly overruled.

7. The statements of appellant explanatory of certain of his actions, shortly before the killing, were properly excluded.

HARRY WARD AND JOHN G. CARLISLE FOR APPELLANT.

The court erred in admitting the evidence showing that Conrad was at the depot when deceased arrived; and should have admitted the proof as to appellant's statements to witnesses immediately before the killing. Erred in refusing to give the old fourth instruction, which submitted all the facts and circumstances to the jury on the question of self-defense. The fourth instruction given by the court is error. It was the duty of the court to give to the jury the whole law applicable to the case.

Oder v. The Commonwealth.

P. W. HARDIN, Attorney General, W. C. P. BRECKINRIDGE, and WEST & PERRIN for appellee.

Can the law of homicide be made so plain as to.be intelligibly given to the jury? Is a man justified in assassination based wholly upon past occurrences?. Can one man, under any circumstances, hunt down and kill another, and be innocent of crime? (Phillips v. Commonwealth, 2 Duv., 328; Bohannan v. Same, 8 Bush; Kennedy v. Same, 14 *Ib.;* Parsons v. Same, 78 Ky.)

C. W. WEST for appellee.

In the absence of instructions five, six, and seven, from the bill of exceptions, it is submitted that the "reasonable doubt" instruction is given more than once in this case.

JUDGE HARGIS delivered the opinion of the court.

The appellant, Alexander Oder, and Volney Hall, were brothers-in-law, and the evidence tends to show that Hall's daughter Mary staid with Oder some two years.

About the time she left his house he told her father that he had discovered improper relations between her and a young man who was laboring for Oder.

Hall disbelieved this statement, and imputed his daughter's misfortune to Oder, if any had befallen her.

He threatened to kill Oder, waylaid him, assaulted him with a pistol, and sought an ex-convict, who testifies that he offered him $500, which he refused to accept, to kill Oder.

The threats and lying in wait occurred several times, and were communicated to Oder, who armed himself with a shot-gun, which he carried about with him.

He and a man by the name of Conrad came once or twice to Cynthiana together. Each time Conrad was seen at the depot; and on the morning of Tuesday, the 31st of May, 1881, Conrad went to the depot, and Hall, who had been to-Fayette county, got off of the train. Shortly after the train arrived, Oder went to a livery-stable where he had

Oder v. The Commonwealth.

left his horse and buggy and shot-gun, and got the gun. He then proceeded to Pike street; Conrad came by the stable, went on to Pike street, and went down it on the opposite side from Oder, who came upon Hall in front of the post-office, asked him "if he was ready," and while he was turning, and before he got turned around, at a distance of fifteen, or twenty feet, shot him through the heart, and after he fell, advanced a step or two, and fired the other load of the gun into his head, tearing away the skull, and leaving the brain exposed.

Conrad came across the street and said to Oder, "Come on, you have killed him." Oder immediately surrendered himself, and was subsequently indicted, and after having been tried once, which resulted in a hung jury, he was again tried, convicted, and sentenced to the penitentiary for the period of fifteen years. From that sentence he prosecutes this appeal.

On the trial the court instructed the jury first as to murder, second as to manslaughter, third with reference to the doubt as to the degree of the offense, and fourth in this language:

"If the jury shall believe, from all the evidence, that, previous to the time of killing, the deceased, Volney Hall, lay in wait for the defendant, and menaced and threatened to kill him, and attempted violence upon his person with a deadly weapon, or did any or either of them, then he had the right to consider the same in determining whether he was in danger of losing his life, or of suffering great bodily harm at the hands of Hall, whenever with or near him; these alone will not excuse the killing; but the defendant had the right to bear arms openly, and when he met the deceased, if from such lying in wait, threats, menaces, and

attempted violence, if any, and from the circumstances attending the meeting, or if, from the circumstances attending the meeting alone, he in good faith believed, and had reasonable grounds to believe, that he was then and there in danger of losing his life, or of suffering great bodily harm at the hands of the deceased, then he was not obliged to wait until he was actually assaulted,' but he had the right to use such means as were at hand, and as were necessary, or apparently necessary, to protect himself from such immediate danger, and if, in doing so, he shot and killed deceased, he is excusable on the ground of self-defense, and should be acquitted, unless the jury shall believe, from all the evidence, beyond a reasonable doubt, that at the time of the killing the defendant sought the deceased with the intention, and for the purpose of killing him, in which case he is not entitled to an acquittal on the ground of self-defense."

By the terms of this instruction the appellant was excluded from considering the menaces, lying in wait, and threats by Hall, unless the jury believed, from the evidence, that they actually occurred.

While their proof would add weight to the claim of self-defense, yet they are not to be entirely cut out of the defense, unless shown to the jury to have existed.

The appellant had the right to consider the threats which were heard and communicated to him by others; also the waylaying of him by Hall, which was known to others, who informed him thereof, whether he heard the threats or had personal knowledge of being waylaid by Hall or not, provided he in good faith believed, and had reasonable grounds to believe, from the circumstances as they appeared to him, that Hall had waylaid and threatened him; but in

forming a belief, upon such information, the appellant must have acted at his peril, and with the utmost good faith, and been free from making such information a pretext to slay Hall. The question is not whether the jury believed Hall threatened and waylaid the appellant, but whether the appellant believed, and had reasonable grounds to believe, he had done so, and the jury should have been so instructed and allowed to decide.

The maintenance of self-defense in a court of justice, under such a state of facts as exhibited by this record, requires, upon the part of the court, the utmost care, so that the accused may not be deprived of its right upon the one hand, and assassination excused on the other.

After a careful review of the authorities on the subject, we declare the law to be this: that when a person has been merely threatened by even the most lawless character, it furnishes no legal excuse for taking his life.

But when a person has been threatened, waylaid, menaced, and assaulted with a deadly weapon, and he afterwards casually meets his foe, if, from his character, antecedent conduct, and the circumstances of the meeting and his presence, he believes, and has reasonable grounds to believe, judging thereof for himself, but at his peril, that his foe is about to inflict on him loss of life, or great bodily harm, or will then and there carry into execution his design to kill him, or do him such harm, unless prevented, he is not bound to wait until actually assaulted, but he may lawfully use such force as shall be necessary to avert such impending danger; but it is always a question for the jury to judge of the reasonableness of the apprehended danger, and the unfeigned belief of its existence by the person imperiled by it.

Oder v. The Commonwealth.

And in this connection, in view of the qualification added to the instruction quoted, it is necessary to determine the rights of the accused under an opposite tendency of the evidence from that contemplated by the qualification.

It must be accorded as a right, to which all citizens are entitled, that the accused "may leave his home for the transaction of his legitimate business, or for any lawful and proper purpose," and while so engaged, having reasonable grounds to believe, and in good faith believing, that he had been threatened, waylaid, and assaulted with a deadly weapon, he had the right to carry arms openly, and keep a lookout for his enemy, or procure information of his movements in good faith, and alone for the purpose of guarding himself from surprise, or being taken unawares, and if, under such circumstances, a meeting casually occurs, then the law of self-defense applies in the same manner, under similar circumstances as indicated where the meeting is casual, and without precautions against surprise, further than being armed for the purpose of self-protection; but in no state of case is one person allowed by law to hunt down or seek another for the purpose of killing him, and in pursuance of such an intention, accompanied by such an act, take his life; hence if the defendant sought the deceased with the intention of killing him, or purposely brought about the meeting between them, or made his presence a mere pretext for slaying him, he cannot rely upon the law of self-defense to excuse his act, although he may have believed that he had been threatened, waylaid, and assaulted by the deceased, who would, at some future time, execute his design.   It will be seen, from this view of the law, that the instruction was erroneous in two aspects—first, in making the right of the appellant to rely upon the threats

and waylaying of him by deceased dependent on the establishment of their existence to the satisfaction of the jury by the evidence; second, in not informing the jury, in connection with the qualification, that the accused had the right to keep a lookout for the deceased, or procure information of his movements, for the sole purpose of avoiding a surprise.

It is agreed by counsel for the appellant and the Commonwealth that certain instructions, relative to reasonable doubt, were given, but not embraced in the bill of exceptions, and that if they have the lawful right to consent to the amendment of the record, they will freely do so. We know no law that authorizes the record to be amended in this manner. If such a practice were adopted in cases of this character, authority of counsel might be disputed by his imprisoned client, after a tentative submission and hearing of his cause had proved disastrous, and in case of bad faith upon the part of the counsel, no protection might be in the reach of the accused, until too late to save him from punishment, and thus embarrassment would be the consequence of its adoption.

The appellant objected to the testimony adduced by the Commonwealth as to what Conrad did in his absence.

The objection was properly overruled, because this evidence was competent as tending to show that the appellant had an opportunity to know that Hall had arrived and got off of the train, and was then in town. The conduct of Conrad, and the motive and purpose he had in going to the depot, was for the consideration of the jury. Whether he went there of his own volition, or at appellant's instance, either for a lawful or an unlawful purpose, should have been left to the jury, under proper instructions, which would have

allowed them an unqualified opportunity of determining the true nature and purpose of what he did.

Appellant's statements explanatory of certain movements and acts of his, which he did shortly before the killing, were not competent; but as a new trial is bound to be given to him, we forbear expressing any reasons for this view, except to say that where his acts are proven, the jury are the judges of their meaning and object, disconnected from his explanation of them, unless they constitute part of the homicide, which is the main fact in issue.

Wherefore, the judgment is reversed, and cause remanded, with directions to grant appellant a new trial.