CASE 65.—PROSECUTION AGAINST ALLEN GAMBRELL FOR
    MURDER.—November 19.

## Gambrell v. Commonwealth

Appeal from Knox Circuit Court.

H. C. FAULKNER, Circuit Judge.

Defendant convicted and appeals—Reversed.

1. Homicide—Murder—Evidence—Conspiracy.—In a murder case
    evidence held to show that there was a conspiracy among
    accused and his brothers to kill decedent, and that in pur-
    suance of it, and while it existed, decedent was killed by one
    or more of them; all of them acting at the time in concert.

2. Criminal Law—Evidence—Declarations and Acts of Conspira-
    tors.—After a conspiracy is formed and exists, each conspir-
    ator is responsible for what the others do in the prosecution
    of their common design, and, in a prosecution of one con-
    spirator for a murder which was the object of the conspiracy,
    it was competent to show the cause of ill feeling between the
    conspirators and decedent, threats by them and their hostile
    declarations, purchase of cartridges by certain of them, and
    every circumstance that tended to throw light upon their acts
    in furtherance of the common design.

3. Homicide—Self-defense—Nature of Defense.—The necessity at
    the particular moment to take his adversary's life will not
    justify accused, if he himself was the wrongdoer or the
    aggravating cause of the difficulty.

4. Homicide—Result of Conspiracy—Self-Defense.—Where two or
    more combine to kill another, and, in pursuance of the con-
    spiracy, seek him out and kill him, or provoke an assault and
    then take his life, neither of the conspirators can rely upon
    the plea of self-defense; but if though a person was killed
    pursuant to a conspiracy, and while it existed, no one of the
    conspirators sought him out for the purpose of killing him, or
    provoked the difficulty resulting in his death, or first attacked

vol. 130—17.

him, then any one of them could avail himself of the plea of self-defense.

B. B. GOLDEN, J. M. ROBISON, JAS. D. BLACK and W. R. BLACK for appellant.

JAS. BREATHITT, Attorney General and TOM B. McGREGOR, Assistant Attorney General, for Commonwealth.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The two principal questions in this case are: First, whether there was sufficient evidence to establish the existence of a conspiracy between Allen Gambrell and his codefendants to take the life of John Gambrell, and whether, in pursuance of such conspiracy, and while it existed, his life was taken; and, second, does the existence of a conspiracy, and a homicide as the result of it, operate to deprive the accused of the right to rely upon the plea of self-defense?

The appellant and his brothers, Silas, Rice, Tom, and Nelson, were jointly indicted, charged with the murder of John Gambrell. The indictment contains several counts, in one of them accusing all of them of unlawfully, maliciously, and wilfully confederating and conspiring together to kill John Gambrell, and of committing the crime in pursuance of the conspiracy and while it existed. In others, it charges each of them individually with the murder, and the others with aiding, abetting, and assisting in its commission. The appellant was tried separately, and his punishment fixed by the jury at imprisonment for life in the State penitentiary. He asks a reversal of the judgment upon this verdict: First, because of error of the court in admitting incompetent evidence against him, and in rejecting competent evidence offered in his

Gambrell v. Commonwealth.

behalf; second, for error of the court in instructing the jury and in refusing to properly instruct the jury; and, third, because the verdict is against the law and the evidence. An examination of the record shows that the only alleged errors we need notice are those relative to the admission of evidence and the correctness of the instructions. Indeed, these are the only ones pointed out or relied upon by his counsel.

John Gambrell was killed in July, 1907. About a month previous to this, Garrett Gambrell, a brother of John, shot Green Gambrell, a brother of appellant, and from the effects of the wound received he died some days afterwards. The difficulty between Green and Garrett was the cause and beginning of the hostility between Allen Gambrell and his brothers and friends, upon the one side, and John Gambrell and his brothers and friends, upon the other. The record does not disclose any previous ill feeling between the parties. Soon after Green Gambrell was shot, Allen Gambrell procured the issual of a warrant against John Gambrell and his brothers Garrett and Hedger, charging them with the shooting of Green Gambrell, and this aggravated the ill feeling between the families. Shortly after this, and while Green Gambrell was lying wounded at the house of Elijah Hubbard near where he was shot, Allen and his brothers were almost constantly in attendance upon him, and during the time several, if not all, of them were armed with pistols. John Gambrell occasionally passed along the road near by the house of Hubbard, and on one occasion, while all of the accused were at Hubbard's, Nelson and Rice asked Silas and Allen if they were going with them that night to waylay the boys (meaning John Gambrell and his brothers), and if so to get ready; but for some reason they did not make

the attempt. On another occasion, Silas Gambrell ran into the house of Hubbard, got his pistol, and told Allen and Rice to get theirs, that some persons were coming up the road, and he expected John Gambrell was one of them. One witness testified that, a short time after Green Gambrell was shot, he was advising Rice Gambrell to keep out of trouble, when Rice replied that "he would rather fight it out." On another occasion Rice said, speaking of John Gambrell and his brothers, that "he would kill them all." On Sunday morning, the day of the homicide, Nelson Gambrell said he was going to the schoolhouse, that all of his brothers would be there with whisky, and he was expecting trouble. On the same morning, Tom Gambrell called at the house of Gus Warren, got his pistol, and said that if he did not come back to get a wagon and haul him back. On the Saturday before, a man named Mount Warren, in company with Tom Gambrell, borrowed a 32 pistol (Smith & Wesson special) from Gayle Patterson. On Sunday morning, Allen and Rice Gambrell bought pistol cartridges at one place, and Tom bought cartridges at another. Other witnesses said they saw all of the Gambrells at the schoolhouse whispering a short while before John Gambrell arrived there, and heard one of them ask one of the others to let him have some cartridges, when the one to whom the request was made replied, "I need mine." Another witness said that after John Gambrell came to the schoolhouse, and while he was looking in at the window, Allen Gambrell passed by him and gritted his teeth, and presently threw a rock, just missing John's head. Other witnesses say that Allen Gambrell and his brothers were in the schoolhouse where the services were being conducted, and that when John Gam-

brell rode up all of them went out of the house. The homicide took place on a Sunday afternoon at a schoolhouse in which a religious meeting was at the time being conducted. Numbers of people, men, women and children, were present, and many testified for the Commonwealth, and others in behalf of the accused. The testimony in some of its details is conflicting, but in a general way two views of it were presented; one favoring the Commonwealth, and the other the accused. That for the Commonwealth tended to show that the altercation that ended in the death of John Gambrell was commenced by Allen Gambrell, who was at all times the aggressor and fired the first shot. The evidence for the accused conduced to show that the difficulty was commenced by John Gambrell, and that Allen shot him in self-defense.

The evidence for the Commonwealth tended to show that Allen Gambrell and his four brothers, the majority, if not all of them, being armed with pistols, were present at the schoolhouse, that they knew John Gambrell would be there, and that they assembled for the purpose of engaging him in a difficulty and killing him. That more than one of them shot him is made plain by the evidence of the doctor, who examined the four pistol wounds inflicted upon his person, and testified that one of them was made with a 45 pistol, two with a 38 pistol, and one with a 32 pistol. Two of these balls entered the front of his body, one of them entered his back, and another struck him in the hand or arm. The difficulty commenced almost immediately after John Gambrell alighted from his horse and came up to the house. He there met Allen Gambrell. A few words passed between them. Allen threw a rock at John and drew his pistol, but was prevented from doing further violence

by spectators who interfered. When this affray was
ended by the interposition of others, John Gambrell
went into the schoolhouse through one of the windows
near which he was standing, and almost immediately
the shooting commenced that ended in his death. The
encounter on the outside, the angry words, the dis-
play of weapons, and the knowledge on the part of the
congregation of the hostile feeling between the par-
ties, naturally caused great excitement and confusion;
the result being that the record contains conflicting
statements as to who fired the first shot. Some wit-
nesses testified that the first shot was fired by Allen;
others that it was fired by John. Allen Gambrell,
in his own behalf, said that he was on the outside of
the schoolhouse when John went in through the
window, and that in a moment afterwards he heard
a shot fired in the house, and some one said, "Rice
is shot, and thinking, that it was his brother, he
stepped inside the door, when John Gambrell imme-
diately fired his pistol at him; the bullet boing through
his hat. Thereupon, to protect his own life, he
quickly fired two shots at John. Immediately after
the shooting, Allen Gambrell and his four brothers
left the schoolhouse together, and a few days after-
wards, and before his arrest, Allen Gambrell fled
from the State and went to the state of Illinois, where
he was arrested while going under an assumed name.

There are in the record a number of circumstances
pointing to the conclusion that Allen Gambrell and
his brothers entertained for John Gambrell a feeling
of deadly hostility. These circumstances, taken in
connection with the facts heretofore mentioned, were
well calculated to convince the jury that there was a
conspiracy and agreement between these brothers to
take the life of John Gambrell, and that, in pursuance

of it, and while it existed, he was killed by being shot by more than one of them; all of them acting at the time in concert. Three of them shot him. Which one fired the fatal shot is not material. The declarations, acts, and conduct of Allen and those indicted with him, heretofore mentioned, were all competent and sufficient to establish a criminal intent on their part to take the life of John Gambrell. The declarations and acts of either of the conspirators, in pursuance of the conspiracy, after it was formed and before the end, was in legal contemplation the act of all of them. Each was responsible for what the others did in the prosecution of the design for which they combined. It was competent to show the cause of the ill feeling, the threats, the hostile declarations, the purchase of the cartridges, the whispered conversation at the schoolhouse, the fact that they left it in a body when John Gambrell was seen approaching, and every circumstance and incident that tended to throw light upon their acts in furtherance of the common design. Powers v. Commonwealth, 61 S. W. 735, 22 Ky. Law Rep. 1807, 53 L. R. A. 245; Commonwealth v. Hargis, 99 S. W. 348, 30 Ky. Law Rep. 510. A conspiracy is almost necessarily established by the welding into one chain of a number of links, each in itself inconclusive and insufficient to prove the conspiracy, but, when connected and examined as a whole, sufficient to show it. What occurred at the schoolhouse was the end of the conspiracy. The object of its formation had been accomplished. The accused were acting in concert there. Tracing backward their steps, we pick up here and there a link in the chain that united them in the evil purpose of accomplishing the death of John Gambrell.

With the evidence in this condition, the court, in

connection with other instructions, gave the following that are especially complained of: "If you believe from the evidence, beyond a reasonable doubt, that John Gambrell was killed in pursuance to and in furtherance of a conspiracy, in the manner and form as required by instruction No. 2, and that Allen Gambrell, the defendant, was a member of such conspiracy at the time, you ought not to acquit the defendant on the ground of self-defense, or apparent necessity therefor, or the defense of another, or the apparent necessity therefor, but should find him guilty of wilful murder under instruction No. 2." Instruction No. 2 reads as follows: "If you shall believe from the evidence, beyond a reasonable doubt, that the defendants Nelson Gambrell, Silas Gambrell, Rice Gambrell, Allen Gambrell, and any other person or persons to the grand jury unknown, or any two or more of them, including the defendant, Allen Gambrell, conspired, confederated, combined, and banded themselves together and agreed to and with each other to kill and murder John Gambrell, and that in pursuance and furtherance of such conspiracy, confederation, combining, and banding together, and while the same existed, any one or more of the defendants above named, or some persons to the grand jury unknown within such conspiracy as included the defendant, Allen Gambrell, did shoot and kill the said John Gambrell in this county, and before the finding of the indictment herein, then you ought to find the defendant guilty of wilful murder as charged in the indictment herein, and fix his punishment at death or confinement in the State penitentiary for life, in your discretion, according to the proof."

It will thus be seen that the jury were instructed that Allen Gambrell's plea of self-defense would not

Gambrell v. Commonwealth.

avail him, if the jury believed beyond a reasonable doubt that the state of facts existed set out in instruction No. 2. The question then presented is: Did the fact that Allen Gambrell was a member of the conspiracy formed to kill John Gambrell, in pursuance of which and while it existed John Gambrell was killed, deny him the right of self-defense, although except for the conspiracy he would upon his own evidence alone have been entitled to an instruction presenting this defense?

The reason upon which the doctrine of self-defense rests may be generally stated to be that the person depending upon it to excuse or justify his conduct must himself at the time of the homicide be free from blame, without fault, and not the aggressor. Every person has the natural as well as legal right to protect his own life, although in so doing it becomes necessary to take the life of another, and the right to defend his person against unlawful violence and use such force as appears to him in the exercise of a reasonable judgment to be necessary to protect himself from impending danger; but the fact that it was necessary at the particular moment to take the life of his adversary will not excuse or justify him, if he himself was the wrongdoer or the aggravating cause of the difficulty, or if his own conduct and actions brought about the condition that made it necessary to resort to this method for protection. One who provokes a difficulty, with the purpose of killing his enemy, and carries his plan into execution by killing him, cannot shield himself from the consequences of his wrong upon the pretense that it was necessary that he should take the life of his adversary in self-defense. These general statements are fully supported

in Oder v. Comth., 80 Ky. 32, 4 Ky. L. R. 18, where
the court said: "But in no state of case is one person
allowed by law to hunt down or seek another for the
purpose of killing him, and in pursuance of such an
intention, accompanied by such an act, takes his life.
Hence, if the defendant sought the deceased with the
intention of killing him, or purposely brought about
the meeting between them, or made his presence a
mere pretext for slaying him, he cannot rely upon
the law of self-defense to excuse his act." And Allen
v. Commonwealth, 86 Ky. 642, 6 S. W. 645, 9 Ky.
Law Rep. 784, where the court said: "If, however,
one by his own wrongful acts makes the harm or
danger to himself necessary or excusable in the per-
son who is inflicting or about to inflict it, then the
former cannot, upon the plea of self-defense, excuse
the taking of life or the infliction of great bodily
harm. Nor can he do so if he seeks the other party,
not innocently, but with the intention of provoking a
difficulty, and does so. He must not, however, be
deprived of the benefit of the plea of self-defense,
because words innocently spoken by him or in jest,
or some act done by him not calculated or intended
to do so, and not resorted to as a shield for an in-
tended wrong, may have contributed to bring on the
difficulty." To the same effect are Boner v. Common-
wealth, 40 S. W. 700, 19 Ky. Law Rep. 409; Foutch
v. State, 95 Tenn. 711, 34 S. W. 423, 45 L. R. A. 687,
and editorial note; Logsdon v. Commonwealth, 40
S. W. 775, 19 Ky. Law Rep. 413; Johnson v. Common-
wealth, 94 Ky. 578, 23 S. W. 507, 15 Ky. Law Rep.
281; and many others that might be cited. And so
when two or more confederate and combine together
for the purpose of killing a person, and in pursuance
of and while such conspiracy exists seek him out and

kill him, or provoke or begin the assault or attack and then take his life, they will not be permitted to escape the consequences of their wrongful act upon the theory that it was excusable under the laws of necessity. We cannot think of a state of facts that presents stronger reasons for denying the right of self-defense than when several form a conspiracy to destroy the life of the object of their hatred and malice, and in pursuance of it seek him out or provoke or begin the attack upon him. A conspiracy to murder is the very essence of malice. It includes evil intent, hatred, and predetermination to kill. It embraces every element of guilt and has no one of the mitigating features that reduce murder to manslaughter or excuse or justify homicide. A "conspiracy," as the word indicates, is an unlawful agreement, and the members of the conspiracy are entitled to but scant protection under the law of necessity while they are carrying out their unlawful engagements.

But the instruction goes further than is here indicated, and deprived the accused of his right to rely upon the plea of self-defense if the deceased was killed pursuant to the conspiracy and while it existed, although no one of the conspirators may have sought him out for the purpose of killing him, or have provoked the difficulty that resulted in his death, or have first attacked him. If Allen Gambrell and his brothers, in pursuance of the conspiracy, and while it existed, went to the school-house for the purpose of killing John Gambrell, or if either one of them first provoked the difficulty with him, or first attacked him, then neither of them could rely on the plea of self-defense. On the other hand, although they had previously formed a conspiracy to kill John Gambrell,

yet, if they did not go to the school-house with that purpose in view, or did not first attack or assault him, or provoke a difficulty with him, they would be entitled to a self-defense instruction, if it appeared from the evidence that John Gambrell, at the time he was killed, commenced the assault, or made it necessary that they should take his life in defense of their own. Under the facts of this case there is no doubt that the instruction noticed was prejudicial to the substantial rights of the accused, and, as it did not in our opinion correctly present the law applicable to the case, we find it necessary to remand it for a new trial. The error in the instruction is not trivial or technical. It treated one of the most important features in the case; and under it, although the jury might have believed that John Gambrell commenced the attack by firing the first shot at Allen Gambrell, and further believed that Allen Gambrell's life was then and there in imminent danger, and that it was necessary that he should take the life of John Gambrell to protect his own, yet they could not acquit him on the ground of self-defense (and that was the only plea he relied on), if they believed that he was a member of the conspiracy formed for the purpose of taking the life of John Gambrell, and that in pursuance of such conspiracy, and while it existed, Allen Gambrell was killed, although they might not have believed that pursuant to the conspiracy Allen Gambrell went to the schoolhouse to kill John Gambrell.

With the exception indicated, and a few minor errors, the instructions clearly presented the law applicable to the various states of case presented by the evidence. It is true that they are quite lengthy, but the facts of the case are so complicated that it was necessary that several phases of the law of homicide

Gambrell v. Commonwealth.

should be set out. The instructions, as they should be given on another trial, are as follows:

"1. (a) The words 'willful' and 'willfully,' as used in these instructions, means intentional; not accidental or voluntary. (b) The word 'feloniously,' as used in these instructions, means proceeding from an evil heart or purpose; done with the deliberate intention of committing a crime.. (c) The phrase 'with malice aforethought,' as used in these instructions, means a predetermination to do the act of killing without legal exceuse; and it is immaterial at what time before the killing such a determination was formed. (d) A criminal conspiracy, within the meaning of the word 'conspired' as used in these instructions, is a corrupt combination of two or more persons to do an unlawful act or to do a lawful act by unlawful means. (e) You are to take and receive all the evidence which the court permitted you to hear about the alleged shooting of Green Gambrell by Garrett Gambrell for the purpose only, and in so far only, as it may in your judgment tend to show motive for the acts and conduct of the parties to the difficulty in which John Gambrell was killed, if in your judgment it does so show or tend to show motive. The word 'motive,' as used in these instructions by the court, means inducement, reason, cause, or incentive to do the acts and things charged in the indictment herein, if they or any of them were done.

"2. If you shall believe from the evidence, beyond a reasonable doubt, that the defendants Nelson Gambrell, Silas Gambrell, Rice Gambrell, Thomas Gambrell, Allen Gambrell, or any two or more of them, including the defendant Allen Gambrell, conspired and agreed to and with each other to kill and murder John Gambrell, and that in pursuance and further-

ance of such conspiracy, and in execution thereof, and while the same existed, any one or more of the defendants above named within such conspiracy as included the defendant Allen Gambrell, did willfully shoot and kill the said John Gambrell, in this county, and before the finding of the indictment herein, then you ought to find the defendant, Allen Gambrell, guilty of willful murder as charged in the indictment herein, and fix his punishment at death or at confinement in the State penitentiary for life, in your discretion, according to the proof.

"3. But if you do not believe from the evidence, beyond a reasonable doubt, that the state of facts as set out in instruction No. 2 existed, yet do believe from the evidence beyond a reasonable doubt that the defendant, Allen Gambrell, in this county, and before the finding of the indictment herein, willfully and feloniously shot and killed John Gambrell, not in his necessary or apparently necessary self-defense, and not in the necessary or apparently necessary defense of Nelson Gambrell, Silas Gambrell, Rice Gambrell, or Thomas Gambrell, or you believe from the evidence, beyond a reasonable doubt, that Nelson Gambrell, Silas Gambrell, Rice Gambrell, or Thomas Gambrell, or any one or more of them, in this county, and before the finding of the indictment herein, willfully and feloniously shot and killed John Gambrell, not in their necessary or apparently necessary self-defense, or in the necessary or apparently necessary defense of one of them or of Allen Gambrell, and that the defendant Allen Gambrell was present at the time and near enough so to do, and did, willfully and feloniously, aid, encourage, advise, or command the person or persons, who did shoot the said John Gambrell, so to do, not in his necessary or apparently necessary self-

defense, and not in the necessary or apparently neces-
sary defense of the other defendants, or some one or
more of them, then you ought to find him guilty;
guilty of willful murder if you shall believe from the
evidence beyond a reasonable doubt that such shoot-
ing and killing of John Gambrell, or such aiding and
assisting, was done with malice aforethought; or
guilty of voluntary manslaughter, if you shall believe
from the evidence beyond a reasonable doubt that
such shooting and killing of John Gambrell, or such
aiding and assisting, was done in sudden heat and
passion or in sudden affray and without previous
malice.

"4. If you find the defendant guilty of willful mur-
der, either under the second or third instructions, you
will fix his punishment at death, or at confinement in
the State penitentiary for life, in your discretion,
according to the proof. If you find the defendant
guilty of voluntary manslaughter, under either the
second or third instructions, you will fix his punish-
ment at confinement in the State penitentiary for a
period of not less than 2 nor more than 21 years, in
your discretion, according to the proof. If you find
him not guilty, you will say so, and no more.

"5. If you shall believe from the evidence that no
conspiracy existed as defined in instruction No. 2, but
do believe that at the time the defendant shot and
killed John Gambrell, if he did so, or at the time he
aided, encouraged, advised, or commanded Nelson
Gambrell, Silas Gambrell, Rice Gambrell, Thomas
Gambrell, or any one or more of them, to shoot and
kill the deceased, if he did so do, as defined in instruc-
tion 3, he believed, and had reasonable grounds to
believe, that he or the other defendants above named,
or any one or more of them, was then and there in

danger of death or the infliction of some great bodily harm at the hands of the said John Gambrell, and that it was necesasry, or was believed by the defendant in the exercise of a reasonable judgment to be necessary, to shoot and kill the deceased, or to aid, advise, encourage, or command the other defendants, or one of them, so to do in order to avert that danger, real or to the defendant apparent, then you ought to acquit the defendant upon the ground of self-defense and apparent necessity therefor or the defense of another and apparent necessity therefor.

"6. But, if you believe from the evidence, beyond a reasonable doubt, that the defendant, Allen Gambrell, first began the difficulty by shooting John Gambrell or making a demonstration to shoot him, then you ought not to excuse the defendant on the ground of self-defense or apparent necessity therefor, or the defense of another or apparent necessity therefor, as defined in instruction No. 4. Unless you believe from the evidence that he, or he and those acting with him, if any, abandoned such assault and difficulty in good faith, and then the deceased, seeing or knowing of such abandonment, continued to assault the defendant, or either of the defendants, or to so menace them or any of them, or that it was necessary, or was believed by the defendant in the exercise of a reasonable judgment to be necessary to shoot the deceased, or to aid, encourage, advise, or command one of the other defendants to so shoot and kill the deceased in order to avert that danger, real or to the defendant apparent, in which event you ought to acquit the defendant on the ground of self-defense and apparent necessity therefor.

"7. You are further instructed that if you believe from the evidence, beyond a reasonable doubt, that

Gambrell v. Commonwealth.

Allen Gambrell was a party to a conspiracy formed for the purpose of taking the life of John Gambrell, and that in pursuance of such conspiracy, and while it existed, Allen Gambrell and any one or more of the other conspirators went to the place where they knew or believed John Gambrell would be, for the purpose of killing him, and did then and there willfully kill him in execution of such conspiracy, or that Allen Gambrell, or any one or more of the conspirators, first commenced the difficulty by shooting or making a demonstration to shoot John Gambrell, you should not acquit Allen Gambrell on the ground of self-defnse or apparent necessity, but should find him guilty of willful murder under instruction No. 2.

"8. If you shall have a reasonable doubt from the evidence of the defendant having been proven guilty, then you ought to find him not guilty; or if you shall believe from the evidence, beyond a reasonable doubt, that the defendant has been proven guilty, but shall have a reasonable doubt from the evidence as to whether his crime be willful murder as defined herin, or of the lower offense, voluntary manslaughter, as defined in these instructions, then you ought to find him guilty of voluntary manslaughter, and fix his punishment as provided therefor in instruction No. 4."

Wherefore, the whole court sitting, the judgment is reversed, with directions for a new trial not inconsistent with this opinion.