## Gibson, et al. v. Commonwealth.

(Decided September 24, 1920.)

### Appeal from Clinton Circuit Court.

1. Conspiracy—Evidence of Incident to Conspiracy.—Evidence of a shrill whistle, a peculiar yell and the singing of a song ridiculing decedent was competent evidence as part of and as an incident to a general charge of conspiracy.

2. Criminal Law—Criminal Intent—Evidence.—Circumstances and incidents tending to throw light on the acts of several persons in the furtherance of a common design are competent as evidence of a criminal intent on their part to take the life of decedent.

3. Criminal Law—Reversal.—The admission of inconsequential evidence is not a ground for reversal.

4. Criminal Law—Argument and Conduct of Counsel.—Where objection is made to an argument of the attorney for the Commonwealth and said objection is sustained and the jury admonished not to consider the statements, the court having done all it was requested to do is not required to do more.

5. Criminal Law—Argument and Conduct of Counsel.—Where counsel is of the opinion that an argument is sufficiently prejudicial to the interest of his client to deprive him of a fair trial he should request the court to discharge the jury, but failing to do this and electing to take his chance before the jury, he cannot complain upon appeal.

6. Criminal Law—Instructions—Reversal.—In a trial for murder, where there are several defendants, the fact that an instruction

is necessarily long is not ground for reversal, if it fairly and properly submits to the jury the questions in issue.

BERTRAM & BERTRAM and JAMES DENTON for appellants.

W. N. FLIPPIN, CHARLES I. DAWSON, Attorney General, and CHARLES W. LOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

Appellants, Marion Gibson, George Gibson and Whiz Lee, are respectively the two sons and son-in-law of the appellant Steve Gibson, the four of whom, together with Gilbert Gibson, were indicted for the murder of Marvin Cummings, a deputy sheriff of Clinton county. The tragedy occurred at the court house in Albany, about sundown, March 6, 1920.

Gilbert Gibson having disappeared, the others were tried and found guilty; three of them were given sentences of 18 years in the penitentiary and the fourth, George Gibson, was given two years.

The facts and circumstances surrounding the crime may be substantially stated as follows:

Some time previous to March, 1920, Gilbert Gibson and Whiz Lee had been indicted, the latter for moonshining. After his acquittal Whiz endeavored to get some whiskey which had been taken from him, but it had disappeared. This provoked the senior Gibson to compose a couplet reflecting upon the character of the sheriff and his deputies, and which he sang on several occasions, much to the dislike and disapproval of decedent. The singing of these lines and the arrest of the two above mentioned brought about strained relations between the parties.

Ten or fifteen minutes before the killing Marion Gibson and his brother George started through the court house for the purpose they testify of going to the barber shop on the south side of the public square. At this time decedent and two companions were seated in the sheriff's office. Having been requested by Marion Gibson to come to the door, decedent left his companions and went with Marion to the south end of the hall, and in a few minutes was heard to say repeatedly, "Don't crowd me." In the meantime someone had been rattling the doors of the court house and people were heard running through the hall. The two companions hastened to the hallway and there they found decedent with his back to

the balustrade, surrounded by the four Gibsons and Lee, still calling out not to crowd him.

Steve Gibson struck at decedent, whereupon decedent drew his pistol from his overcoat pocket and struck at Steve; both blows fell short of their intended victims.

One of the companions grabbed Marion Gilbert, the other held decedent, just as the latter, with an oath, ordered the crowd out of the court house. They started toward the north end of the building, proceeded a short distance, then everybody stopped, and, to use the language of one of the witnesses, "they seemed to be mixing it up." At this time decedent fired first at Steve Gibson and then at Marion. Because of the darkness and the smoke from the two shots the witnesses say it was impossible to tell just who was doing the shooting, but in the course of about half a minute twenty odd shots had been fired, eight of which entered the body of the deputy sheriff, resulting in his instant death.

The county clerk, who left the building just before the killing, says the two south doors and one of the north doors were locked, and he closed or locked the remaining north door when he went out. As the doors were closed one of the appellants, speaking of the Gibson boys, was heard to remark, "he has locked them up."

Several witnesses testify to having heard a shrill whistle and peculiar yell about this time, and almost immediately thereafter they saw Steve Gibson running around the court house trying first one door and then the other, finally entering through the north door. As he did so Whiz Lee and Gilbert Gibson, who had been standing in front of a store near the court house, started in a fast walk or trot in the direction of the court house, following closely upon the heels of Steve Gibson. When Steve entered the hall he asked, with an oath, who had locked up his boys.

Almost continuously from the time Marion and decedent met until the shooting ceased, there was much cursing and a great deal of noise in the hallway. Two of the Gibsons and Whiz Lee purchased a quantity of cartridges at a nearby store late that afternoon. It was not shown that any of the defendants went to the court house for the purpose of transacting any business.

It is first urged the court erred in permitting evidence of the whistle, the yell and the song, but each of these was but a part of or incidental to the general charge of conspiracy and competent as evidence in support thereof. It was proper, among other things, to show

the ill feeling between the parties; the singing of the lines which had a tendency to subject decedent to ridicule; the presence of Marion Gibson in the court house at that hour of the day; calling decedent into the hall; the shrill whistle and peculiar yell, and coincident therewith the hasty advent of Steve and Gilbert Gibson and Whiz Lee to the court house, as well as the remark of Whiz that they had locked the boys in the court house; crowding decedent against the balustrade; the cursing; the noise and general confusion and the purchasing of the cartridges, were all circumstances and incidents tending to throw light upon the acts of the several appellants in the furtherance of a common design and as evidence of a criminal intent on their part to take the life of decedent. Each of the appellants was responsible for what the others did in the prosecution of the design for which they combined. Gambrell v. Commonwealth, 130 Ky. 513, 113 S. W. 476; Morgan v. Commonwealth, 188 Ky. 458, 222 S. W. 940. As stated in the former opinion:

"A conspiracy is almost necessarily established by welding into one chain of a number of links, each in itself inconclusive and insufficient to prove the conspiracy, but, when connected and examined as a whole, sufficient to show it."

The testimony showing the facts above mentioned was such as might well be calculated to convince the jury there was a conspiracy and agreement between the appellants, and it was pursuant to said agreement and understanding that decedent forfeited his life.

Objection was made to the testimony of Tom Dicken, and also to the introduction of evidence as to cuts found in the sack coat and overcoat of decedent. As to the first the evidence in inconsequential; the witness merely testified he had seen a pistol other than the one used in the affray in a drawer in a desk in the sheriff's office. As to the cuts in the clothing the custody of the coats was sufficiently accounted for from the time of the shooting until the discovery of the holes in each of them shortly thereafter, and until their production in court.

Argument of counsel for the Commonwealth is likewise urged as a ground for reversal, but when an objection was made by counsel for appellants the court in each of the two instances complained of properly sustained the objection and admonished the jury not to consider said statements; thus the court did all that it was requested to do.

One of the remarks was made in response to a statement made by appellants' counsel in his closing argument. Had appellant believed the conduct of Commonwealth's counsel was sufficiently prejudicial to his interests to deprive him of a fair trial he could have requested the court to discharge the jury, but this he failed to do. Having thus elected to take his chance before the jury he cannot now be heard to complain. Bradshaw v. Commonwealth, 187 Ky. 297, 219 S. W. 170.

The instructions are objected to, but upon a careful examination of same we are unable to find any prejudicial error therein. It is true the instructions are long, the character of the case necessarily made them so, but they fairly and properly submitted to the jury the questions at issue, and we find no cause for complaint therewith. The case was tried before a jury composed of citizens of Wayne county.

Upon an examination of the record and of the several points urged by appellants for reversal we do not find wherein the substantial rights of appellants have in any wise been prejudiced, hence the judgment must be and is accordingly affirmed.