## Combs v. Commonwealth.

(Decided November 30, 1923.)

## Appeal from Letcher Circuit Court.

1. **Homicide—Evidence Held Insufficient to Show Conspiracy to Murder.**—In a prosecution for feloniously conspiring, confederating, and banding together to kill and murder, evidence held not to warrant conviction of owner of pistol used by another in killing deceased.

2. **Criminal Law—In Reviewing Court, Testimony Must Produce More than Mere Suspicion of Guilt.**—It is a solemn duty of courts when asked to review convictions, to conclusively satisfy themselves that the testimony taken as a whole was justly and fairly calculated to produce more than a mere suspicion of guilt and to contain at least some convincing and satisfying weight.

STEPHEN COMBS, JR., and D. D. FIELDS & DAY for appellant.

THOS. B. McGREGOR, Attorney General, and EDWARD L. ALLEN, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE ROBINSON—Reversing.

In the indictment under which appellant, Bill Combs, was tried in the Letcher circuit court, he and one John Moore were accused of unlawfully, wilfully and feloniously conspiring, confederating and banding together with the unlawful purpose of killing and murdering John Sexton, and under the evidence and instructions of the court he was convicted of murder and his punishment fixed at confinement in the penitentiary for life. His motion for a new trial being overruled, he has appealed, urging a number of grounds for a reversal of the judgment; but after a careful examination of the record, we feel it necessary to consider only the last, viz.:

"Because the jury rendering the verdict in said case was prejudicial to the defendant and its findings contrary

to the law, and in violation of defendant's rights, and, further, not supported by evidence to sustain such a verdict or the judgment of the court.''

On January 13, 1922, John Sexton was killed in the home of appellant's wife, Anna Combs, from whom it appears he had been separated for a period covering six or eight months; although the evidence discloses that he as well as a number of other men, including the deceased, visited there frequently. About seven o'clock on the night of January 15, Sexton (who lived some distance away on Camp branch), with a companion, Sam Adams, visited Anna Combs' house, where there were some three or four women and seven children, five of whom belonged to Anna Combs and two to one of the visitors; and possibly an hour later John Moore and the appellant, Bill Combs, also made their appearance. The evidence discloses that these women were all of questionable character and that a general air of depravity pervaded the premises; but upon this particular occasion, throughout the entire testimony, there is not a scintilla of evidence furnished that would lead to the suspicion that any trouble was brewing or that any of the visitors had gathered there with a malicious or sinister intent, but rather on the contrary it would appear that all of them were in a particularly good humor, and three of the witnesses for both appellant and appellee testified that words of good cheer and of a most friendly nature were constantly indulged in, especially between the men, one of whom, Sam Adams, had accompanied John Sexton and left shortly after the arrival of appellant and John Moore. The festivities continued, interspersed with more or less drinking out of a bottle supplied by John Moore; though at no time does the evidence show that any of the men were drunk, as the supply of liquor seemed very limited, in consequence of which Moore stated that he would return to the home of Monroe Collins, a brother-in-law of appellant and with whom appellant had been making his home since the separation from his wife, and augment their stock with a bottle he had left there, but upon reaching Collins' residence, appellant suggested that they retire for the night as he was sleepy and did not care to go out again. To this Moore demurred and said that he would go over on Smoot creek to the home of one Johnny Adams and purchase an ample supply of whiskey, and requested appellant to lend him his pistol, he having left his at

home. Again appellant declined, stating that he did not wish any whiskey and that he did not know where his pistol was. Moore continued to ask for it, and appellant finally yielded and instituted a search for it and returned, saying that his sister, the wife of Monroe Collins, had misplaced it and it could not be found; and said to Moore that it was not necessary to take a pistol on his errand as he would be in no danger whatever; however, Moore continued to urge the necessity for a weapon of some kind, as the night was dark and the road long, until finally the appellant procured the pistol. These facts are testified to by both Monroe Collins and his wife. At this point, Moore stated that he was out of tobacco and he and appellant called to Monroe Collins, who had retired some time earlier, and asked if he had any, to which he replied in the negative, but that they could possibly secure some at a small store conducted by Bent Collins about 200 yards away. The appellant reported, however, that Collins was sick and would not open his store at this hour. Moore claimed that he would and induced appellant to accompany him. There they secured the articles desired, and Moore suggested that they again visit the home of Anna Combs before he went upon his errand. Upon reaching there John Sexton, the man afterwards killed, asked Moore if he had any whiskey, and he replied that he was then on his way to Johnny Adams' for some. Sexton procured a canteen in which he suggested that the liquor be put, and directed Moore to use his (Sexton's) horse that he might return more speedily. Moore did as directed, leaving in the house the women and Sexton and Combs, but returned in about an hour and a half and was greeted by Sexton with the query, "Did you get the whiskey?" to which Moore replied that he had not, but said, "I have a little left in my other bottle and will give you a drink." From the testimony of all witnesses, not an unpleasant word was spoken, but on the contrary apparently the most friendly relations still existed. For a time matters proceeded without trouble or altercation of any kind. In this one small room were four women, seven children and three men. Just before the killing, Sexton was sitting on the floor directly in front of the fire. Moore was on his right and a girl named Cora Collins on his left, while appellant was farther away in a corner apparently dozing; and Sexton, who had possibly imbibed more than the rest, arose and walked over to a bed and began teasing one of

the children, but being urged to desist, he started back toward the fire, and in passing John Moore it is alleged he either struck, pushed or kicked him, whereupon without a word, he sprang to his feet and shot him three times, resulting in his instant death. Naturally there was great confusion, in the midst of which Moore ran out of the house, followed by Combs and the women. He proceeded at once to the home of Monroe Collins, where he had been invited by Collins to spend the night, and a moment later Combs arrived and Moore announced that he had shot John Sexton. He was later arrested, tried and convicted for this killing, and on the following day appellant was arrested and later indicted. The first calling of the case resulted in a mistrial and on the second the judgment carried with it life in the penitentiary. Right here the question must of necessity arise, upon what reasonable evidence or testimony did the Commonwealth rely or the jury consider in warranting this verdict? True it is disclosed that once Combs is alleged to have said that he did not wish to catch three certain men hanging around Anna Combs' home, and that at one time John Sexton was passing and Combs indicated that he was one of them. However, on the night of the killing three witnesses for the Commonwealth are emphatic in their statements that the relations between all of the men were most friendly and noticeably cordial. Again it is contended by attorneys for appellee that owing to the fact that Sexton was killed with a pistol belonging to appellant this was of itself a most suspicious and incriminating fact; however, with this we can not agree, as it is clearly and unmistakably demonstrated by testimony of appellant and John Moore (who did the killing) and by Monroe Collins and his wife that the appellant seriously objected to lending Moore the pistol that he wished to take with him when he contemplated going four miles up Smoot creek to procure whiskey; that appellant further told him that he did not need this weapon and even resorted to the subterfuge that his sister had misplaced it in order to prevent compliance with his request; and from the evidence there is strong reason to believe that appellant feared Moore might decamp with it, which, it appeared, was a valuable instrument in that section.

After reviewing the evidence carefully and scrutinizing with exceeding care the slight evidence that might tend to show that appellant was or could have been pos-

sessed of any guilty knowledge of Moore's intentions, we are forced to the conclusion that it was not of a character sufficient to warrant his conviction. In fact, this killing seems to have been wholly the result of some sudden fury, augmented possibly by the drinking of bad whiskey on the part of John Moore without the knowledge or consent or desire of appellant, who made no effort to escape from the scene of the killing. The court says in the case of Anderson v. Commonwealth, 196 Ky. 30: "We are aware of the rule that a conspiracy may be proved by circumstantial evidence alone and that necessarily the testimony in the trial of the conspiracy charged must take a wide range," and in the case of Gambrel v. Commonwealth, 130 Ky. 519: "A conspiracy is almost necessarily established by the welding into one chain of a number of links, each in itself inconclusive and insufficient to prove the conspiracy, but when examined as a whole sufficient to show it." However, it is the solemn duty of courts when asked to review the proceedings wherein a defendant was convicted to conclusively satisfy themselves that the testimony taken as a whole was justly and fairly calculated to produce more than a mere suspicion and to contain at least some convincing and satisfying weight. Every law should be strictly and rigidly enforced, and it is the unalterable and sworn duty of our courts and of its officers to strictly adhere to this principle; but, nevertheless, is it not equally imperative that no innocent person should be imprisoned or deprived of the liberty so dear to all unless his guilt shall have been proven beyond mere suspicion, and we feel that the trial court should have sustained the motion for a peremptory instruction as offered by attorneys for appellant; and, therefore, the judgment is reversed, with directions to grant a new trial and for proceedings consistent herewith.

Judgment reversed.