## Baird et al. v. Commonwealth.

(Decided January 12, 1932.)

F. A. HARRISON, for appellants.

J. W. CAMMACK, Attorney General, BASIL P. COOPER, of counsel, for appellee.

Opinion of the Court by Judge Willis—Reversing.

Rose Baird and Juanita Baird were convicted of the crime of conspiracy to rob a state bank, and each condemned to serve a term of three years in the penitentiary. They have prosecuted an appeal, insisting that the evidence was insufficient to justify the conviction. The contention compels an examination of the evidence.

On Saturday, April 4, 1931, two men and two women appeared in Grant county in a Chevrolet sedan. They stopped at a public sale, where one of the men approached C. M. Flege, whom he had known at Russell, Ky. The man's name was Wm. Miller. Miller introduced his companion as Mr. Rogers, but his real name was Mitchell. The two women were introduced as the wives of Miller and Mitchell. They took Flege in the car with them and drove to various places about the county. During the journey they stopped at Mt. Zion to obtain some gasoline. Flege was with the party about two hours and a half. Miller told him they desired to buy a farm in Grant county, and they viewed various farms. They did not stop at Flege's farm, but passed by it, and its location was pointed out to them. Miller and Mitchell and one of the women got out, but Mr. Flege and Rose Baird remained in the car. Mitchell wanted to know if he could get a $20 bill changed, and Mr. Flege told him where the bank was situated. Mitchell and Juanita Baird went to the bank and got change for the $20 bill. Miller paid for the gasoline with a $1 bill. Then they returned to the car and visited various places, discussing farm lands and matters pertaining thereto. They went by the way of Sherman and returned to the sale, where they dropped Mr. Flege. They then disappeared, and nothing is

shown regarding their movements or whereabouts from Saturday until Monday morning. On Monday, about 9 o'clock, the same men and women in the same car were seen driving towards Mt. Zion. When they got within about two miles of Mt. Zion the two women got out of the car and waited along the road. It is apparent that they were waiting, for they walked along the road and then retraced their steps. Finally, they started walking towards Sherman, and shortly after 10 o'clock were picked up by the men in the car, proceeding at a high rate of speed. The car was not brought to a complete stop, but slowed down until the women got aboard. At about 10 o'clock the two men had appeared at the bank in Mt. Zion, bound and gagged the cashier in charge, and robbed the bank of more than $2,000. The automobile belonged to Rose Baird, who had registered it in Kansas City, Mo. The four then drove to the farm of Mr. Flege, arriving between 10 and 11 o'clock. They spent the remainder of the day there, looking over the farm, with a pretended purpose of purchasing it. One of the women became ill, and remained on the bed during the three or four hours they stayed at the farm. When the women got out of the car, one of them insisted upon locking it, although she was advised that was not necessary. The farm of Mr. Flege was not on the main highway, being about a mile or more away on a side road, and more or less secluded. The robbers were identified, and word was broadcast to apprehend them. Several days later they encountered the police in Bowling Green, Ohio, and endeavored to escape from the officers. Miller was killed, Mitchell escaped, and the two women were captured and brought back to Kentucky, where they were put on trial under the indictment.

The commonwealth insists that the circumstances proven were sufficient to justify the conviction, whilst the appellants contend that the evidence was inadequate for that purpose. A conviction may be had upon circumstantial evidence, but the circumstances shown must be so unequivocal and incriminating in character as to exclude every reasonable hypothesis of the innocence of the accused. Moore v. Com., 223 Ky. 128, 3 S. W. (2d) 190; Arvin v. Com., 241 Ky. 127, 43 S. W. (2d) 516; Tarkaney v. Com., 240 Ky. 790, 43 S. W. (2d) 34. Direct proof of a conspiracy to commit crime is seldom available, and it is generally sufficient to justify the jury in finding a conspiracy if it is shown that the persons

charged therewith pursued by their acts the same object by the same means, one performing one part of a transaction and the other another part thereof, co-operating or conducing to the attainment of the particular end or accomplishment of the specific purpose of the alleged conspiracy. The jury may infer from the concurrence of the acts of the parties that it did not result from mere accident. But a conspiracy may not be established by suspicion, and evidence of relationship among accused parties, or their association at the time a crime was committed by one or more of them, is not enough to exclude every reasonable hypothesis of innocence of those not directly engaged in the act. The mere knowledge, acquiescence, or approval of the criminal act, without co-operation or agreement to co-operate in its commission, is not enough to constitute one a party to a conspiracy to commit the crime. There must be intentional participation in the transaction, or some portion of it, with a view to the furtherance of the common criminal purpose or design. 12 C. J. sec. 6, page 544; Pace v. Com., 170 Ky. 560, 186 S. W. 142; Woodall v. Com., 230 Ky. 698, 20 S. W. (2d) 722.

A conspiracy to commit crime is almost necessarily established by the welding into one chain of a number of links, each in itself inconclusive and insufficient to prove the conspiracy, but, when connected and considered as a whole, leading unerringly to the conclusion of concerted action toward a predetermined end. Gambrell v. Com., 130 Ky. 513, 113 S. W. 476; Anderson v. Com., 196 Ky. 30, 244 S. W. 315; Welch v. Com., 189 Ky. 579, 225 S. W. 470; Gibson v. Com., 189 Ky. 89, 224 S. W. 657.

Yet a criminal conspiracy cannot be established on evidence amounting only to a surmise, or arousing only a suspicion of its existence, even though a strong one, nor by relationship or association of the parties that of itself may be innocent of criminal character. Howard v. Com., 220 Ky. 585, 295 S. W. 888; Myers v. Com., 210 Ky. 373, 275 S. W. 883; Pharris v. Com., 198 Ky. 51, 248 S. W. 230.

Whilst one of these appellants went with one of the robbers to get a $20 bill changed, and the other woman owned the automobile in which the robbers rode to and from the scene of the crime, and they permitted themselves to be introduced as the wives of the robbers, and continued to associate with them until they were appre-

hended by the officers, the fact remains that they were not present when the robbery was committed, but were two miles away, awaiting the return of their companions, and spoke no word and performed no act to aid, incite, encourage, or accomplish the commission of the crime.

The use that was being made of the automobile, so far as is known, prior to the occasion of the robbery, was a lawful one. The conversations with Flege concerning the lawful purpose of the men in Grant county, if like representations were made to them, might have deceived the appellants. Unfortunately, the record does not show the purpose of the women in getting out of the car and awaiting the return of the men. They certainly were not there to watch or to help in the robbery. Cf. Bright v. Com., 235 Ky. 781, 32 S. W. (2d) 351. The criminal act may have been committed by the men without the knowledge, consent, or acquiescence of the women. Indeed, it is not shown that the women assisted or co-operated in the commission of the crime, or shared in the spoils, or had knowledge of the robbery. The fact that Miller had an acquaintance in the county whom he sought out and introduced to his companions might have tended to convince his associates that he had lawful reason for visiting the county, although the subsequent events demonstrate that the men were capable of embracing an opportunity to commit a crime. The appellants may be innocent of the crime, and since there is at least room for reasonable doubt upon that subject the evidence fails to exclude every reasonable hypothesis of innocence. The suspicious character of the conduct of the women arises entirely from the knowledge of subsequent events and, even in that light, the evidence is not sufficient to sustain the conviction.

Judgment reversed for a new trial not inconsistent with this opinion.