## Anderson v. Commonwealth.

(Decided October 13, 1922.)

### Appeal from McCreary Circuit Court.

1. Conspiracy—Circumstantial Evidence.—A conspiracy may be proven by circumstantial evidence and, since it is difficult to prove because of the secretiveness of the conspirators, it is almost necessarily established by the welding into one chain of a number of links each in itself inconclusive and insufficient to prove the conspiracy, but, when connected and examined as a whole, sufficient to show it.

2. Criminal Law—Submission to Jury.—Courts are not authorized to determine the guilt or innocence of the defendant in a criminal charge because the evidence preponderates even largely the one way or the other, and where there is substantial probative evidence either direct or circumstantial the case should be submitted to the jury under appropriate instructions and the verdict will not be disturbed, unless it is so flagrantly against the evidence as to indicate passion and prejudice on the part of the jury.

3.  Conspiracy—Want of Probative Evidence—Suspicion.—Where, however, there is no substantial probative evidence of the defendant's guilt, and where the only possible link in the chain of circumstances introduced to convict him of a conspiracy is as much or more consistent with his innocence as with his guilt, and at best furnishes only a bare suspicion, it is the duty of the court to hold that the evidence does not warrant a conviction and to so direct the jury; and the same rule applies as to the issue of being present aiding and abetting another in the commission of the crime, in which case a directed verdict of acquittal should be given where there is no substantial evidence, either direct or circumstantial, to show that the defendant on trial was an accomplice.

4.  Criminal Law—Directed Verdict.—Evidence examined as set out in the opinion and held, that the court erred in overruling defendant's motion for a directed verdict in his favor, since the evidence was wholly insufficient to establish any of the crimes for which he was tried.

VIRGIL P. SMITH and STEPHENS, COYLOR & HATFIELD for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

In the indictment under which appellant, William Anderson, was tried in the McCreary circuit court, he was accused of conspiring with Mose and Bill Walker to kill and murder K. Anderson and that appellant was present, counselling, aiding, abetting and advising the murder. Under the instructions of the court he was convicted of voluntary manslaughter and punished by confinement in the penitentiary for two years. His motion for a new trial was overruled and he appeals, urging a number of grounds for a reversal of the judgment, but under our view of the record we have concluded to consider but one of them, which is, that the evidence is insufficient to sustain the conviction.

On the August, 1921, primary election day when deceased, K. Anderson, was killed by Mose Walker, the latter also shot and killed Starlin Angel, both of which killings occurred at an election precinct in the south part of the county near the Tennessee line and at about 5 o'clock p. m. The two persons killed, as well as appellant and his co-defendants, lived in Scott county, Tennessee, a short distance from the Kentucky line, but appellant had a relative who was a candidate in the primary and he

went to the polling place at about eight o'clock in the morning and remained there throughout the day. At least three of his sons were also there, the youngest of whom was about eleven years of age. Besides the parties immediately present at the difficulty resulting in the homicides, including the defendants in the indictment, there were a considerable number of people at, around and about the polls throughout the day, which appears from the record to have been a long observed custom in that vicinity. The testimony for the Commonwealth shows substantially these facts: That appellant had served at least one term in his county in Tennessee as deputy sheriff and he went to the primary election at about eight o'clock in the morning, and that about that time or a little later his co-defendants, Will and Mose Walker, appeared on the ground and perhaps appellant was seen talking to one or both of them at different times, but not secretly, nor any more than he was talking with other persons present on the ground; that near the hour of eleven o'clock in the morning a crowd of perhaps a dozen or more, including the defendants in the indictment, consumed some moonshine whiskey, the amount of which is not shown, but it appears to have been produced by Will Walker and that about the time the whiskey was consumed, there was some controversy between the latter and some member of the crowd other than appellant about contributing to a fund to pay for the whiskey, but there was no difficulty of any kind at that time nor were there any angry remarks and there is no testimony connecting appellant with what did then occur. The place where the whiskey was consumed was about twenty feet from the road and the crowd went from there into the road where, according to the testimony of Nimrod Angel, the father of Starlin Angel, who was the first witness introduced by the Commonwealth, they met a young man by the name of Long and some other boys where appellant, who perhaps was spurred on by the exhilarating influences of the moonshine, proceeded to deliver to the young men and boys a lecture which, in the language of the witness, was: "He said he wanted to make an impression on the young man. Said he was a nice-looking young man but he had not personally known him and he said there was one thing he wanted them to pay attention to and that was to be sure never to meddle with nobody's business—to always 'tend to their own business and let other men's business alone and it didn't matter what it

was." Starlin Angel was present at the time but the deceased, Anderson, was not. Later the witness added to the lecture by testifying that appellant also said therein, "I have had a man to meddle with my business and try to trample me under foot." Mose Walker heard the lecture, and, according to the witness, he contributed the statement, "If a man were to meddle with my business once he would never meddle with nobody else's, for I have the difference." Nothing occurred following or as a result of that good advice voluntarily given by appellant, but his co-defendant, Bill Walker, according to the testimony, again brought up the question of some one owing him a balance on the whiskey he had furnished, which resulted in some angry words between him and the deceased, Starlin Angel, and in which controversy the latter struck Bill Walker in the face and caused him to draw his knife, but nothing else occurred at that time and the appellant is not shown to have had any connection whatever with what happened at that time. Later in the day Mose Walker and the deceased, K. Anderson, had some angry words in the road in front of the voting place. It is not shown just what was said on that occasion except that Mose Walker said "something about settling with him" (K. Anderson). After that the appellant and Mose Walker were seen walking along the road together, but among the crowd, and no one heard them say anything or engage in any act indicating animosity toward the deceased or even evidencing anger on the part of appellant toward any one. Albert Anderson, the brother of deceased, testified that Mose Walker, just after the lecture of appellant, above referred to, and in the controversy about the money to pay for the whiskey, threw a rock and hit the deceased, Starlin Angel, causing the latter to strike Bill Walker and afterwards, in the language of the witness, "Mose jumped my brother (the deceased, K. Anderson) up there at the voting ground and I made him go off and leave my brother alone." In that attack Walker, according to the witness, among other things, said, "There is nothing in you, K.," which brought forth a similar counter-charge by the latter against Walker, at which juncture the witness endeavored to and did stop the difficulty. Appellant was not shown to have been present, or that he had any connection whatever with that trouble. Later, Mose Walker invited the witness, Albert Anderson, to go with him for a private conversation and

they went to the top of a hill in sight of the election grounds where a temporary armistice was agreed to, but the imaginary insults, which Mose Walker had received from the deceased, K. Anderson, and the striking of his brother by the deceased, Starlin Angel, seems to have lingered with him, and he and his brother, Bill, between two and three o'clock, went by themselves to a neighbor's and procured a pistol for the purpose of "protecting themselves," according to the testimony of a witness for the Commonwealth who met them as they were going and which testimony is uncontradicted. After their return and about thirty or forty minutes before the shooting, Mose Walker was sitting upon a rock when the deceased, K. Anderson, passed and he made the remark in substance that if he had the law on his side he would kill the s— of a b—. Appellant was standing in the road not far from him at the time, but whether he heard that remark is not proven by any witness for the Commonwealth and he denies having heard it. A witness testified that shortly thereafter appellant nodded to Mose Walker and a little later the two went down the road some distance from the voting place where a number of people had stopped on their way home, it then being about five o'clock. In that crowd were the two persons killed, two brothers of the deceased Anderson, a son of the appellant, the father of the deceased, Starlin Angel, and perhaps others, and they were engaged in some heated conversation when, according to the testimony of the Commonwealth's witnesses, Mose Walker appeared and without saying anything shot the deceased, Starlin Angel, and then turned and shot K. Anderson. There were other shots fired and appellant's son was wounded, supposedly by Mose Walker. Appellant had no pistol or weapon of any kind and it is not proven that he spoke any word or did any act calculated to encourage Mose Walker in the commission of the homicides or that he approved them in any way. On the contrary, he was as much excited and apparently surprised as any one of the numerous persons present. He was some distance from Walker when the shooting occurred and the only fact from which it could be even suspected that he aided and abetted Walker in the commission of the two crimes was the fact that he walked with him from the voting place to the place of the shooting. He fully explains that by saying he went there on his way home and expected to find his eleven-year-old son whom he had failed to find anywhere in the crowd near

the voting place. He denied having nodded to Mose Walker when the latter breathed a threat against the deceased, Anderson, some thirty minutes before the shooting and states that about that time he turned his head to look at the sun to learn the hour of the day and whether or not it was time for him to go home. One witness testified that about one o'clock, while the appellant was eating his dinner at the home of a Mr. Litton near the voting place, he said that some one would die that day if he had to kill them himself ''or something that way,'' and that two other witnesses whom he named were present, but neither of whom were introduced though their names were included in the list for the Commonwealth; and appellant denied the statement. It was furthermore attempted to be shown by the Commonwealth that appellant about a year before the killing had some trouble with the deceased, Anderson, but the nature of which is not shown, but whatever it was occurred while appellant was deputy sheriff in his county. The uncontradicted proof was that after that time the deceased and appellant were on friendly terms. Perhaps other trifling and insignificant circumstances appear in the record but we have stated substantially all the testimony relied on for a conviction.

We are aware of the rule that a conspiracy may be proved by circumstantial evidence alone and that, necessarily, the testimony in the trial of a conspiracy charge must take a wide range, since, as said in the case of Gambrell v. Commonwealth, 130 Ky. 519, ''A conspiracy is almost necessarily established by the welding into one chain of a number of links, each in itself inconclusive and insufficient to prove the conspiracy, but, when connected and examined as a whole, sufficient to show it.'' That statement of the rule of practice was referred to with approval in the case of Welch v. Commonwealth, 189 Ky. 579, and it but expresses the universal rule upon the subject. As a result of the latitudinous application of the rule it frequently occurs that acts, statements and conduct of an alleged co-conspirator are permitted to be proven before there is any established connection between him and the defendant on trial, which testimony, however, should always be excluded if the Commonwealth's testimony fails to connect the defendant therewith.

We are further aware of the thoroughly established and long followed rule of this court that where there is

any substantial probative evidence in the trial of a criminal case the guilt or innocence of the defendant should be submitted to the jury by appropriate instructions, although a conviction based thereon would be regarded as flagrantly against the evidence; but that rule goes no further, and it does not interfere with the right and authority of the court to direct an acquittal when there is no substantial probative evidence to establish the guilt of the defendant on trial. Indeed, the latitudinous rule referred to recognizes that the sum total of the proof necessary to establish a conspiracy consists of a chain of evidence composed of more than one link, each of which singly and alone might be "inconclusive and insufficient to prove the conspiracy," but as a whole "sufficient to show it." The law against crime should be enforced and it is the duty of the courts and others connected therewith to do so; but it is as important that the innocent go free as that the guilty be punished. So jealous is the law of the rights of the citizen that it is everywhere recognized that no one shall be punished unless his guilt is proven beyond a reasonable doubt.

Hence, it is the duty of courts when called upon to review the proceedings wherein the defendant was convicted to satisfy themselves that the testimony as a whole was reasonably calculated to produce more than a mere suspicion and to possess at least some convincing weight. This is as true in conspiracy cases as in others, and we find in the text of 12 C. J. 638 this statement, "On the other hand, conspiracies can not be established by a mere suspicion, nor does evidence of mere relationship between the parties or association show a conspiracy." That rule was recognized by this court in the cases of Pace v. Commonwealth, 170 Ky. 560, and Lockard v. Commonwealth, 193 Ky. 619. In each of those cases the evidence supporting the alleged conspiracy was as strong as that shown by this record with the exception, perhaps, of one fact which will be subsequently noticed. Indeed, in the Pace case the testimony, if anything, went farther towards establishing the conspiracy than is true in this case; yet, in each of them we held that the evidence was insufficient and that the testimony in support of the conspiracy charge did not authorize its submission to the jury.

The only fact in this case which has the remotest tendency towards connecting the appellant with any conspiracy is the alleged remark he made at the dinner table.

He denies having done so, but if it be admitted, it is but a single "inconclusive and insufficient" suspicious circumstance and is as consistent, if not more so, with appellant's innocence as with his guilt. It will be observed that the witness only testified to what he concluded was the substance of what appellant said, for he adds to his answer "or something that way." From the observations of appellant during the day, whereby he saw liberal consumptions of whiskey and frequent quarrels resulting in blows and angered demonstrations, he might well conclude that some one would die there that day, and surely under the circumstances that remark, if true (and it is not strengthened by any other proven link in the chain), is insufficient to establish appellant's guilt and to justify us in approving a penitentiary sentence based thereon. If this conviction could be upheld on the evidence adduced, then any other person present on that day and who occasionally was seen in the presence of the two Walkers, or either of them, and who, under the circumstances, expressed an opinion that some one might die, could likewise be convicted. It is unnatural for persons engaged in a conspiracy to commit a dastardly deed, such as the taking of the life of his fellow man, to be in a good humor always and engaged in singing innocent songs, for animus will necessarily display itself at some time and in some way during the existence of the conspiracy. In this case, as we have seen, the witnesses on both sides say that appellant exhibited no anger or even displeasure at any time throughout the day, but that, on the contrary, he was all the while jolly and in a good humor. We, therefore, conclude that the evidence was insufficient to establish the conspiracy and under the doctrine of the Pace and Lockard cases, *supra,* no instruction based thereon should have been given.

What we have said as to the condition of the evidence relative to the conspiracy applies with equal force to the charge against appellant of aiding and abetting Mose Walker in the commission of the crime. He did not participate in the shooting by any proven word, act or deed; his only connection with it was that he was present and saw what occurred as did many others. Our conclusion is that there was a failure of proof to connect the appellant in any way with the crime for which he was tried and that the court erred in not sustaining his motion for a directed acquittal, and if the evidence on another trial should be substantially the same the court will sustain the motion.

Wherefore, the judgment is reversed with directions to grant a new trial and for proceedings consistent herewith.