## Bowling v. Commonwealth.

(Decided October 20, 1922.)

### Appeal from Leslie Circuit Court.

1. Homicide—Conspiracy to Murder—Instructions.—Where one is indicted jointly with another charged with murder and with conspiracy to murder, an instruction on self-defense which only gave the defendant, on his separate trial, the right of self-defense if he himself fired the shot that killed the decedent, was incomplete where the evidence tends to show that the other defendant did the actual shooting, and the instruction should also have embraced the idea that defendant on trial was entitled to an acquittal if he was at the time present and aided and abetted his co-defendant in the killing, if he believed and had reasonable grounds to believe that they or either of them were in danger at the hands of decedent.

2. Homicide—Conspiracy to Murder—Instructions.—Where the evidence tended to show that defendant on trial and his co-defendant were the aggressors in a difficulty with decedent, and tended to show there had been a conspiracy, but showed without contradiction the two defendants left the place of the original difficulty and went some sixty or seventy yards away and never returned there, and that decedent followed them to the place and renewed the difficulty and was killed, a qualification of the right of self-defense in the instructions was unauthorized.

L. D. LEWIS, M. C. BEGLEY and J. G. BEGLEY for appellant.

CHAS I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

Appellant and his brother, Ben Bowling, were jointly indicted in the Leslie circuit court charged with the wilful murder of Robert Bowling by conspiring and confederating together and agreeing with each other to kill and murder Robert Bowling, and in pursuance and further-

ance of such conspiracy, and while same was in existence, Ben Bowling shot and killed said Robert Bowling, and appellant, Emanuel Bowling, was at the time present and near enough to, and did, aid, assist, abet, encourage, counsel, advise and command the said Ben Bowling to so shoot and kill Robert Bowling.

In a second count it is charged in practically the same language, that appellant, Emanuel Bowling, did the shooting and killing and that Ben Bowling was present and aided, assisted, abetted, encouraged, counselled, advised and commanded the said Emanuel Bowling in the shooting and killing.

Appellant on his separate trial was found guilty of manslaughter, and the court having declined to grant him a new trial, he has appealed.

Whether the self-defense instruction given by the court correctly stated the law of the case, as applied to the facts in evidence, is the only question necessary to decide.

The essential facts are practically uncontroverted, and are that appellant and his brother and deceased were second cousins, and lived in the same neighborhood; that another cousin, Chester Bowling, operated a country store in the vicinity, and his dwelling house was some sixty or seventy yards from his storehouse; that on the 11th of March Robert Bowling and his wife went to the store of Chester Bowling for the purpose of buying some needed articles, and that Robert Bowling either was drunk when he went there or afterwards became drunk; that in the afternoon of that day, and while Robert Bowling was still there, appellant also came to the store and purchased some small articles, and as he was going further away from his home and expected to return that way later in the afternoon, he left the articles he had purchased with the understanding he would stop by and get them as he returned, and the articles were taken from the store to the house of Chester Bowling so there would be no necessity for opening up the store; that he did go away and returned in an hour and a half or two hours, and upon his return some difficulty arose between him and Robert Bowling, the exact nature of which is not clear from the evidence; but Chester Bowling separated the parties and induced Emanuel to go on away, and in doing so he left the articles he had purchased earlier in the afternoon. When Emanuel so left the second time, Robert Bowling and his wife were still there and it was

still daylight and there was, so far as the evidence dis-
closes, no understanding that they were to remain there
all night instead of going to their home about three-quar-
ters of a mile away.

Emanuel went to the home of another relative about a
half mile away and there, as he and his brother Ben both
claim, they unexpectedly met, although it was the home
of neither of them.  Emanuel, while he was gone, bor-
rowed a pistol, and Ben also had a pistol, and when they
met, they agreed they would go back to the place of
Chester Bowling and get the articles Emanuel had left,
and also some tobacco which Ben claimed he wanted.  On
the way to Chester Bowling's it is admitted by each of
the defendants that Emanuel disclosed to his brother
Ben the fact that he had a difficulty in the afternoon with
Robert Bowling.  When they reached the home of Ches-
ter Bowling, some time after dark, the door of the room
where Chester Bowling, Robert Bowling and others
were sitting was open, and Ben stepped into the open
door first and Emanuel just behind him; when Chester
Bowling saw them entering the door he got up and took
hold of Ben Bowling and said, "You boys come out here,
I want to see you a minute," but Ben said, "No, I want to
speak a word to Robert," and then he asked Robert,
"Have you and Emanuel had any trouble this evening?"
and Robert answered, "Not that I know of, but if you
boys want trouble  . . .  " and then turned to the foot
of a bed in the room and turned up the covers as if look-
ing for something; Emanuel assuming that Robert was
looking for a weapon, presented his pistol at him, where-
upon Chester said to Emanuel, "Don't do that, for God's
sake, he ain't got nothing and you will destroy my fam-
ily," whereupon Emanuel apparently desisted, for he did
not shoot; then Robert walked from the foot of the bed
to the corner of the house, and Emanuel assuming he was
still looking for a weapon, again presented his pistol at
him, and then Chester grabbed the pistol and in the scuffle
with Emanuel it accidentally went off and shot Chester
in the hand.  Chester then let the pistol loose and ran to
the corner of the house on the outside and asked Emanuel
to come to him, saying he had shot him.  Emanuel did go
to him and while they were on the outside Ben Bowling
was standing in the door and Robert Bowling also came
to the door and kicked Ben Bowling, which the latter did
not resent. Just afterwards, at the solicitation of Chester
Bowling, appellant and Ben Bowling left with Chester

and went over to the storehouse some sixty or seventy yards distant, remaining on the outside in the dark near a corner of the building, and left Robert Bowling and the others at the house.

Robert Bowling remained at the house same ten minutes or longer after the others had gone, and while so remaining there first asked for a gun and when told there was none, he asked for a butcher knife, and when told there was none, he asked for an axe and was told there was none. He then, over the protest and against the advice of his wife, of Chester Bowling's wife and of Mart Davidson, who was at the house with him, left the dwelling house and went toward the storehouse. When Robert reached the storehouse the other three were standing around the corner of the house and about five feet from the corner, and Robert, in the language of Chester Bowling, "jumped around" the corner of the house and said, "If you boys want trouble . . . ," and then he, Chester, ran some twenty-five or thirty steps to another corner and about the time he reached that corner the firing began, and Chester Bowling does not state in his evidence which one of the defendants fired the shot or shots that resulted in Robert's death. The defendants each, however, state that Ben Bowling fired the shots that killed him, and appellant states that upon the arrival of Robert he also left the place and heard four shots; that he went around the house one way and after the first four shots some person came around the other way and approached him and he, assuming it was Robert Bowling, fired a shot at him, but that it was in fact his brother Ben at whom he had mistakenly fired in the dark.

The fifth instruction was the one dealing with self-defense, and it told the jury in substance that if Emanuel shot and wounded Robert Bowling from which he died and Emanuel Bowling believed and had reasonable grounds to believe he or his brother Ben were then and there in danger of death or great bodily harm at the hands of Robert, and that it was necessary or was believed by Emanuel in the exercise of a reasonable judgment to be necessary to shoot and kill Robert in order to avert such danger, real or apparent, to either of them, then they should acquit Emanuel on the ground of self-defense.

This instruction only gave to Emanuel the right of self-defense if he himself fired the shot that killed Robert, although in a previous instruction his conviction had

been authorized if he was present and aided and abetted when his brother Ben fired the shot. It is apparent, therefore, that the instruction was incomplete, and should have embraced the idea that appellant was entitled to an acquittal either if he fired the fatal shot in self-defense, as set forth, or if he at the time was present and aided and abetted his brother Ben in so doing, if he believed and had reasonable grounds to believe that they or either of them were in such danger, real or apparent.

The weight of the evidence is that Ben fired the shot that killed Robert, and it appears, therefore, that appellant must have been convicted as an aider and abettor, and this instruction on self-defense does not give him the benefit of that plea if he only aided and abetted his brother Ben.

Another serious complaint of this instruction is that the court proceeds thereafter to qualify the right of appellant to rely upon self-defense, by saying in substance that if the jury believe from the evidence beyond a reasonable doubt that Ben and Emanuel had entered into a conspiracy and agreed with each other to kill and murder Robert and had gone to the home of Chester Bowling where Robert was, and in pursuance of and in furtherance of such conspiracy, either or both of them had first assaulted Robert at the home or premises of Chester Bowling with deadly weapons, and had thereby made the said danger or great bodily harm at the hands of said Robert excusable on his part, and that Emanuel and Ben had never in good faith abandoned or attempted to abandon the difficulty with deceased and had never abandoned the conspiracy, if any, then the jury were directed not to acquit appellant upon the ground of self-defense or of defense of his brother, Ben Bowling, or apparent necessity therefor.

If the killing of Robert Bowling had occurred at the dwelling house of Chester Bowling, and before Ben and Emanuel left the dwelling house and went to the storehouse some sixty or seventy yards distant, this qualification of the self-defense instruction would have been justified. The evidence up to the time they left the dwelling house appears to have put them in the attitude of aggressors, and the jury from the facts and circumstances in evidence might have believed they had theretofore entered into a conspiracy; but whatever their conduct had been previous to leaving the dwelling house, the uncon-

tradicted evidence is that they did leave and went some sixty or seventy yards away and never went back. But, on the contrary, after the occurrences at the dwelling house, the deceased, over the protests of the two women and the one man in the house, and after demanding and calling for any kind of a weapon that he could think of, followed them to the storehouse and there renewed the difficulty by jumping around the corner of the storehouse near where they were with an expression of belligerency.

After they left the house Robert Bowling was in no danger whatsoever; he was in a place of safety and voluntarily left that place and went to where Ben and Emanuel were and the first thing he said was, "If you boys are looking for trouble  .  .  .  ," but this sentence, so far as the evidence of Chester Bowling is concerned, was not completed.

We are constrained to hold under this state of the evidence that the qualification of the self-defense instruction was unauthorized. The things that occurred at the immediate time of the killing were, it is true, closely connected both in time and place, with what had occurred at the dwelling house; but the undisputed fact is appellant and his brother had left the place of the first difficulty and had left Robert Bowling in a place of perfect safety, and when he followed them a short time thereafter and reopened the controversy, however wrongful their acts might have theretofore been, they were not then to be denied the right to rely upon self-defense.

It will be remembered that even before they left the house the deceased was searching for weapons, and when he suddenly appeared around the corner of the storehouse with his belligerent conversation, they were not in such attitude or position as to be deprived of the right of self-defense. It is not to be denied under the admitted facts, the plea of self-defense would have been unavailing to Robert Bowling if he had shot and killed either Ben or Emanuel after following them to the storehouse. Commonwealth v. Hoskins, 18 R. 59; McClurg v. Commonwealth, 17 R. 1339; Reed v. Commonwealth, 140 Ky. 736.

There appears to be no other error, but because of the errors in the instruction referred to the judgment is reversed with directions to grant appellant a new trial and for further proceedings consistent herewith.