## Commonwealth v. Clark, et al.

(Decided October 5, 1923.)

### Appeal from Perry Circuit Court.

1.  Criminal Law—Only Rulings Adverse to Commonwealth Reviewed on Appeal by it.—On appeal by the Commonwealth under Criminal Code of Practice, sections 335, 337, to obtain a certification of the law on rulings of the court, no ruling may be reviewed unless adverse to the Commonwealth.

2.  Homicide—Testimony as to Who Informed Deceased of Use of Liquor by Defendant Immaterial.—In a prosecution for murder of

vice president and general manager of a coal company in a miner's house, where he had gone when informed that persons therein had intoxicating liquor, testimony as to the source of the information was immaterial.

3. Homicide—Mine Officer Not Entitled to Assault Miners Using Intoxicating Liquors.—Though manager of a coal mining company had the right to prevent the use of intoxicating liquors in a miner's house, he had no right to go further than a warning, or legal proceeding, and undertake to correct the evil on his own volition by physical force.

4. Criminal Law—Exclusion of Testimony Not Prejudicial Where Other Witnesses Permitted to Testify.—Exclusion of the testimony of one witness as to finding of whiskey in a house the morning after a homicide was committed there, held not prejudicial to the Commonwealth, where other witnesses were permitted to testify to the same fact.

5. Criminal Law—Proof of Presence of Liquor in House Where Homicide Occurred Erroneous.—In a prosecution for murder of manager of mine in a miner's house at 4 p. m., evidence of presence of liquor in the house the next morning could only tend to prejudice the minds of the jury against defendants by charging them with another separate crime from that for which they were being tried, and was irrelevant.

6. Criminal Law—Exclusion of Evidence Not Prejudicial Where Commonwealth Got Full Benefit.—The Commonwealth was not prejudiced by exclusion of evidence introduced, where it was permitted on cross-examination of defendant to bring out all the facts involved whereby it got the full benefit thereof.

7. Criminal Law—No issue submitted to Jury Without Supporting Evidence.—No issue should be submitted to the jury for which there is no supporting evidence.

8. Criminal Law—Conspiracy Not Submitted to the Jury in the Absence of Evidence to Establish It.—In the absence of any probative circumstance in a homicide case to establish an alleged conspiracy, the court should not instruct upon conspiracy and permit the jury to speculate and surmise as to its existence.

9. Criminal Law—Court Properly Failed to Instruct Upon Conspiracy Where Difficulty Spontaneous.—Where the evidence showed that the difficulty in which the homicide was committed spontaneously arose without the slightest opportunity for concerted premeditation on the part of defendants, and there was no testimony to show any previous ill will, the court properly refused to instruct the jury upon conspiracy.

10. Homicide—Instruction on Defense of Others Not Warranted in the Absence of Evidence.—Where there was no testimony that deceased made any assault or attempted assault on any member of defendant's family or any guest, except two codefendants, the court erred in charging to acquit if the shooting was done in the necessary defense of any of the defendants because of threatened

danger by deceased, or "any such danger to any guest or other individual in the house."

11. Homicide—Instruction on Defense of Another Held Not Prejudicial to Commonwealth.—The Commonwealth was not prejudiced by an instruction authorizing the jury to acquit if defendants killed in defense of others, where there was no testimony of any assault or danger to such others.

THOS. B. McGREGOR, Attorney General, LILBURN PHELPS, Assistant Atotrney General, C. W. NAPIER, Commonwealth's Attorney, and F. J. EVERSOLE for the appellant.

H. C. EVERSOLE, E. C. DUFF, HIRAM BROCK and JOHN ASHER for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Certifying the law.

Appellees, Elihu Clark, Monroe Kilburn and Floyd Kilburn, were jointly indicted in the Perry circuit court upon the charge of murdering Frank Horn. The first count charged the three with confederating and conspiring to commit the murder and in pursuance thereto they jointly did it; while other counts charged each one individually with its commission and that the others were then and there present aiding and abetting the individual perpetrator in its commission. A joint trial was had in the same court, which resulted in a disagreement of the jury, and the Commonwealth has prosecuted this appeal under the provisions of section 335 and 337 of the Criminal Code to obtain a certification of the law on certain rulings of the court made during the progress of that trial, and which concern (1), the admission and rejection of evidence, and (2), instructions given and refused. A statement of some of the material facts will be necessary to a disposition as well as an understanding of the questions raised.

The two Kilburns are brothers-in-law of their co-defendant Clark, the latter of whom worked in a coal mine at Coneva, Ky., which was operated by the Coneva Coal Corporation. The deceased was the vice-president and general manager of that company and a portion of his duties was to look after the renting of the miners' houses on the company's ground and to preserve order generally, though it does not appear that he was an officer or vested with any police power. Clark resided in one of the company's houses and his co-defendants came to Coneva on Friday before the killing, which occurred at

Clark's house on Saturday about 4 P. M. Between their arrival and the hour of the killing they visited Clark's house but spent Friday night with another brother-in-law. Some considerable time before the killing the two Kilburns, the wife of one of them and their sister, who came to Coneva with him, came to Clark's house, where was also the latter and his wife. The day of the killing was pay day at the mine, but it was not done till the afternoon. Some time before the killing Clark shaved and trimmed the hair of each of the Kilburns at his residence and finished a short while before four o'clock, and the members of the household, including the visitors, were engaged in conversation in the middle room of his residence, containing three rooms, while Floyd Kilburn was in one of the end rooms preparing his toilet following the barbering. It was cold and snowing and the doors were shut, and about that time Horn, accompanied by a Mr. Mullins, knocked on the door of the middle room which opened on to a front porch. Some of the witnesses say that he turned the bolt and came in without invitation, while others say that Clark invited the one at the door to "come in." On entering the room he inquired for defendant, Floyd Kilburn, who was pointed out to him in the end room. According to the testimony of the only eye-witness introduced by the Commonwealth, as well as that of the defendants and their witnesses, Horn immediately approached Kilburn in an angry and threatening manner and he immediately ran from the room on the porch and around the house to a back door with Horn in close pursuit and threatening to shoot him if he did not stop. He succeeded in entering the back door, but about that time Horn commenced to strike him in the back with a large pistol which he had in his hand during the chase around the house, and after entering the house with the assaults of Horn continuing Floyd Kilburn shot him; but, according to the testimony, the first shot did not appear to stop the assaults and Monroe Kilburn drew his pistol and fired two or three shots. Horn fell to the floor, where he was found by parties who soon appeared on the scene, lying with his back up and his loaded pistol under him with no fired shells in it, and there is no testimony that he fired his pistol at all. Clark's wife was shot once or twice, but not seriously, and there is testimony that within a short time after the shooting Clark ran out of the back door of his residence some fifteen or twenty feet to an outbuilding and immediately returned, and the witnesses

say he had a pistol in his hand, but the eye-witnesses to the tragedy all testified that he, while in the house and immediately at the commencement of the shooting, ran under a bed located in the room where it occurred and remained there till it was over.

At the beginning it may be said that under the provisions of the code permitting an appeal by the Commonwealth in cases of this kind no ruling of the trial court may be reviewed here unless it is adverse to the Commonwealth. Commonwealth v. Brand, 166 Ky. 753. Much of the argument made in support of complaint (1) (the ruling of the court on the admission and rejection of evidence) is not reviewable on this appeal under the doctrine of the case referred to, since the decisions complained of were in favor of the Commonwealth and not adverse to it.

The three facts to which the discussed testimony related were (a), the information by Horn that whiskey was in Clark's house; (b), the finding of the whiskey in his house the next morning after the killing, and (c), the discounting by Clark of his wage claim against the coal company amounting to $29.30 and his accepting therefor $29.00 on Saturday morning before he was to be paid that afternoon, and perhaps some others even less material.

The purpose of the first fact (a), was to show a lawful motive on the part of Horn in going to Clark's house, and the court permitted proof that he had information that the Kilburns were in that house and had some whiskey which perhaps they and Clark and others therein were consuming. The only inquiry by the Commonwealth to which the court sustained an objection was one relating to the source of that information, i. e., the particular witness or witnesses who gave it to him. We think the court properly ruled that it was immaterial as to who imparted the information to Horn. If he possessed the information, under his duties he no doubt had the right to employ all the legal means at his command to prevent such conduct on the company's grounds, including his right to visit Clark's house with the purpose of warning the participants to abandon such conduct and to desist from further participation in it. He also had the right to institute such legal proceedings as he saw proper to punish the offenders, but evidently he had no right to go further and undertake to correct the evil on his own volition by physical force.

The second fact (b), argued by the Commonwealth was attempted to be established by a witness who took charge of the house, which was vacated after the homicide by every one, including Clark and his family, at the solicitation of some one whom the evidence does not clearly point out. Inquiry was made of the witness as to whether he found some whiskey on the next morning in a grip found in the room and which under the proof was carried there by Docia Kilburn, a sister of Mrs. Clark and of the defendants, Monroe and Floyd Kilburn. We do not think that evidence material and exceedingly doubt its competency, but the ruling of the court was by no means prejudicial to the Commonwealth since Stamper and another witness or two were permitted to testify that they found whiskey in the room the next morning, some of it sitting on the grip, and some of it in other places of the room, but we cannot see the relevancy of any of that testimony, since there was ample opportunity for others to place the whiskey there after the killing and the proof of its presence at a time so far removed from the commission of the alleged crime could only tend to prejudice the minds of the jury against defendants by charging them with another separate one from that for which they were being tried.

In the discussion of the third fact (c), complaint is made by the Commonwealth of the exclusion by the court of the testimony of a witness who testified that Clark came to him on Saturday morning and wanted to sell his statement of wages to the witness and that the witness bought it. The court in excluding it said: "Gentlemen of the jury, the fact that this man got some money is not evidence in this case and you will not consider it for any purpose," and similarly admonished the jury as to the evidence with reference to Clark selling his time to the witness. However, Clark was cross-examined on that subject and was permitted to state fully all the facts concerning it, and if the testimony was relevant at all, which we very much doubt, the Commonwealth got the full benefit of it, and under the holding of the Brand case, *supra,* it is not entitled to a review of the court's ruling on this appeal.

Under complaint (2), it is urged by the Commonwealth that the court erred in refusing to instruct the jury upon the conspiracy charge contained in the indictment, and also erred in certain particulars in its wording of the instructions given, hereinafter pointed out. In dis-

posing of the first objection under this complaint, it may
be stated at the beginning that it is a universal rule of
practice in both civil and criminal causes, that no issue
should be submitted to the jury for which there is no
supporting evidence. We are aware of the rule often
reiterated by this and other courts that a conspiracy
charge is difficult to establish and is more often than
otherwise provable by circumstances, but even under that
rule it has been held a number of times by this court that
in the absence of any probative circumstance to establish
the conspiracy the jury should not be permitted to specu-
late and surmise as to its existence. One of the latest
cases upon the subject is that of Anderson v. Common-
wealth, 196 Ky. 30, in which opinion other cases and
authorities are referred to. We deem it unnecessary to
reiterate the reasons given in those cases and by text
writers and will content ourselves by saying that the
testimony in this case brings it clearly within the rule
therein announced. In support of our conclusion on this
point we do not deem it necessary to recite the evidence
more in detail than we have already done. Suffice it
to say that there is not found in the record a single fact
or circumstance of sufficient probative weight which
would, even remotely, authorize the finding of the ex-
istence of a conspiracy among the defendants to harm the
deceased in the least. No prior ill-will on the part of any
of them against him is even attempted to be proven. The
difficulty in which the homicide was committed appears to
have spontaneously arisen without the slightest oppor-
tunity for concerted premeditation on the part of defend-
ants. So far as the testimony shows there existed the
best of feeling between defendant and the deceased and,
we repeat, no ill-will toward either one against the other
is shown, unless, forsooth, the deceased became irritated
and angered at receiving the report of the presence of
whiskey in Clark's house. We, therefore, conclude that
the court properly declined to give the instruction con-
tended for.

Lastly, under this complaint, it is contended that the
court erred in its leading instructions, and in the one on
self-defense, by authorizing the jury to acquit defend-
ants, or any of them, if the shooting of the deceased was
done in the necessary defense of any of the defendants
because of threatened danger by Horn, or *any such
danger to any guest or other individual in the house.* In

this we think the court was in error, since there is no testimony that Horn made any assault or attempted assault toward or against any member of Clark's family or any guest in the house except the two Kilburns. We are convinced that the error was not in the least prejudical to the Commonwealth, but under the condition of the record we find no ground for excusing the defendants in defending other members of the household in the absence of evidence showing assault or attempted assault on them or any of them by the deceased, or in any way to inflict injury to them, and on another trial if the evidence is substantially the same the court will modify the given instructions in the respects indicated.

Wherefore, this opinion is certified to the trial court as the law of the case.