## Turner v. Commonwealth.

(Decided October 11, 1927.)

### Appeal from Leslie Circuit Court.

1. Homicide.—Verdict of conviction of manslaughter held not flagrantly against the evidence.
2. Homicide.—Instruction in homicide prosecution submitting question of conspiracy held error, in view of failure of evidence to show that homicide was result of conspiracy.

L. D. LEWIS for appellant.

F. E. DAUGHERTY, Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Reversing.

Appellant, Lillie Turner, has been convicted of manslaughter and sentenced by judgment of the Leslie circuit court to confinement in the penitentiary for 13 years. She prosecutes this appeal from that judgment.

It is insisted for her that the verdict is not sustained by, but is flagrantly against, the evidence; hence that the trial court erred in not sustaining her motion for a new

trial upon that ground. To this contention we cannot agree. She was convicted of manslaughter for her connection with and participation in the slaying of Matt Pennington, who formerly had been her husband, but from whom she had been divorced. The evidence for the commonwealth establishes that Matt Pennington died from the effects of a wound inflicted by a .32-20 pistol bullet. At the same time he was killed, his cousin, Felix Pennington, was also killed by a pistol ball of the same calibre. They were killed at the home of Elhanon Turner, a brother of appellant, Lillie Turner. The record discloses that Mary Jane Turner, appellant's mother, Elhanon Turner, his wife, Ethel Turner, and the latter's brother, Hiram Joseph, were present when Matt and Felix Pennington were killed. In fact, they themselves have testified that they were. It was shown that appellant was at the home of her brother, where the homicide occurred, shortly before it happened. It was shown that, at the home of several neighbors, where appellant stopped and conversed with them in the course of the afternoon preceding the homicide, she or her little brother, who was with her, had a .32-20 pistol which she stated was hers. It was shown that preceding this homicide appellant had made statements in the nature of threats against Matt Pennington. It must be conceded that the evidence of threats was exceedingly slight. It was shown that while in jail, after having been arrested on the charge for which she was convicted herein, she stated to two different persons that she had killed Matt Pennington. She denied these two statements, and the reputation of one of those witnesses for general morals and truth and veracity was successfully attacked.

Appellant denied having been present when the homicide occurred, and stated that she was at the home of one of her sisters, approximately a mile away. That sister and her husband, and all of those who were present when the homicide occurred, corroborated her in the statement. All of those who admit they were present testified that the two men who were found dead at the home of Elhanon Turner killed each other in the course of a difficulty growing out of a dispute between them about a pistol trade. The homicide appears to have occurred about 8:30 o'clock in the evening. None of the neighbors of these people came to the scene of the homicide until after daylight the following morning, though

it appears that the closest neighbor was notified about 9:30 o'clock the night it occurred and another at approximately 12 o'clock. To these so notified and others who came the next morning, Elhanon Turner, his wife, his brother-in-law, and his mother, who were present, stated that the two men quarreled with each other about a pistol trade, in the course of which they began shooting at each other, one of them using a pistol and the other a high-powered rifle. Matt Pennington's body lay just inside the door that leads to the front porch and within the bedroom of the two-room home of Elhanon Turner. The body of Felix Pennington lay just outside this door in the porch. A .32-20 pistol was found in the right hand of Matt Pennington, the arm and hand being extended above his head as he lay prone on the floor. The witness who took the pistol from his hand stated that, though his arm appeared to be stiff, his fingers were not. A .44-calibre pistol was found lying on the floor between Matt Pennington's left arm and his body. No weapon was found upon or about Felix Pennington. The high powered rifle, which the Turners told the neighbors one of the combatants was using, does not appear to have been found near either of the dead bodies, but was sitting in the corner of the kitchen room of the home. A .32-20 bullet struck Matt to the left of the spine, in the lower part of his back, and came out near the point and at the front of the right shoulder. The .32-20 bullet which killed Felix struck him in the left side of the neck, ranged downward, and came out on the right side.

Matt and Felix Pennington are shown to have spent the preceding two or three nights at the home of Elhanon Turner, and those of the defendants who admit they were present the night the homicide occurred stated that Matt then had the .44 pistol and Felix the .32-20.

It seems wholly improbable that, after having been mortally wounded, one of those engaged in this deadly combat would have discarded the weapon which he had and could have taken from his adversary the pistol with which he had been so wounded and with it in turn could have inflicted upon the other a mortal wound. The location of the wounds and range taken by the bullets through the bodies of the victims would seem to indicate that they were not fired by two men facing each other in a pistol duel, as the statements of the defendants had it. The version of the tragedy first given by the defendants, to

the effect that one of the Penningtons was using a pistol and the other a high-powered rifle, while shooting at each other, is contradicted by the fact that both of those who were killed died from the effects of a wound inflicted by a .32-20 pistol ball. The commonwealth's case against appellant consisted of these facts: She and Matt Pennington, after an unhappy and at times hostile married life, had recently been divorced; she was traced to the home of Elhanon Turner, where he was killed, a short while before the tragedy; she is shown then to have been armed with the kind and caliber of pistol with which he was killed; and she stated to two persons afterwards that she had killed him. Her defense, an alibi, was presented to the jury by the testimony of herself and her closest relatives, jointly indicted with her. The version of the tragedy given by her co-defendants was contradicted, as above indicated. Clearly in this state of case it cannot be said that the verdict of the jury is flagrantly against the evidence.

Upon the theory that there was no evidence to support it, appellant insists that the trial court erred in submitting an instruction authorizing her to be found guilty if the jury should believe from the evidence that she and any one or more jointly indicted with her conspired to kill Matt Pennington, and that he was killed pursuant to and in furtherance of the conspiracy. The basis for the contention that there was no evidence upon which to found this instruction seems to be well taken. Aside from the facts above indicated, which are to be found in evidence, the record seems to this court to be totally devoid of evidence tending to establish that appellant and any one or more of her co-defendants conspired to kill Matt Pennington. Of the evidence above indicated, the only facts and circumstances which might tend to establish that a conspiracy was entered into, when analyzed, are found to offer no evidence whatever therefor. When reduced to a final analysis all the facts and circumstances above discussed tending to establish the conspiracy are those from which the inference may be drawn that appellant and her codefendants were present when the homicide was committed. The fact that they were together, however, is not sufficient to enable the jury to draw a reasonable inference therefrom that they had conspired to kill Matt Pennington. The parties charged with having entered into this conspiracy are members of an immediate

family, and the place where they are shown to have been was the home of one of them. The two Penningtons who were killed evidently were on good terms with these people, because it is shown that they had made this home where they were killed their headquarters for the preceding four or five days, taking a portion of their meals there and spending the nights there. No evidence of discord or ill feeling is shown. If, in view of the facts and circumstances above noted, of which the record affords evidence, which contradict the version of the tragedy first given by those who were present, the jury was warranted in finding appellant guilty of manslaughter, and the evidence is sufficient to sustain the verdict, as shown above, it does not follow that it was also sufficient to establish that the homicide was murder because the result of a conspiracy.

It is insisted, however, that evidence that appellant and her codefendants conspired to kill Matt Pennington and that he was killed pursuant thereto is to be found in the testimony of Ollie Causey. She testified that some time in the afternoon of the day Matt Pennington was killed Elhanon Turner was at the home of her mother and had a conversation with her. He invited her to go home with him to spend the night, and she declined to do so. From her testimony a good many things were said by him to induce her to go. He told her that Matt and Felix Pennington would be there that night, and that his sister, Lillie, would be there; that he had plenty of whisky at home; that, if they could get enough together that night, they would have a "play" or party; and he also said, "If there is a crooked move made, I will kill the son of a bitch that makes it." The commonwealth insists that this last-quoted statement affords evidence that the appellant and her codefendants already had conspired to kill Matt Pennington, and that the reference to killing somebody was to his killing. The language here used and the connection in which it was used makes it impossible to draw that inference from it. It certainly does not accord with reason that, if these people had conspired to kill the Penningtons, they would have been out inviting the neighbors to be present and witness it. All that this witness testifies that Elhanon Turner said was said by him after the witness had declined to go home with him, and appears to have been said for the sole purpose of overcoming her objection to going and to induce her to do so. It is entirely too vague and indefinite to authorize the in-

ference that it was intended as a threat against anybody or to indicate that its author and others had conspired to kill Matt Pennington and to indicate that that would be done on the occasion when and place where he was inviting the witness to be present. The record affords no evidence that Matt Pennington's death was the result of a conspiracy entered into by appellant and any one or more of her codefendants, and, as there was no evidence upon which to base it, it was erroneous to submit that theory of the case to the jury. We have heretofore in many opinions written of the prejudicial nature of conspiracy instructions in cases where the evidence did not warrant them. See Inman v. Commonwealth, 218 Ky. 88, 292 S. W. 756; Anderson v. Commonwealth, 196 Ky. 30, 244 S. W. 315; Lockard v. Commonwealth, 193 Ky. 619, 237 S. W. 26; Pace v. Commonwealth, 170 Ky. 560, 186 S. W. 142; and Pharris v. Commonwealth, 198 Ky. 51, 248 S. W. 230.

For the reason indicated, the judgment herein is reversed, and cause remanded for a new trial consistent herewith.