## Trusty v. Commonwealth.

(Decided January 31, 1930.)

F. T. ALLEN, ERVINE TURNER and CLAY WATKINS for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Dudley Trusty, Homer Trusty, Bessie Rowe, Gracie Rowe, and Riley Jordon were jointly indicted for the murder of Nealus Moore. Appellant, Dudley Trusty, was tried separately, convicted of voluntary manslaughter, and punished by confinement in the penitentiary for five years. On this appeal he relies upon one ground for reversal, which is that the evidence is insufficient to sustain the verdict.

The killing occurred on Sunday afternoon, July 23, 1928, on Hawes fork of Quicksand creek. During the day the appellant, his codefendants, Nealus Moore, and a number of other persons had traveled up and down the creek, stopped at a number of houses, drank liquor, played cards, and, at least on one occasion before Moore was killed, engaged in a difficulty, which resulted in a

shooting affray in which no one was wounded. Appellant, however, was not present on that occasion. Homer Trusty, Lee Jordon, Bessie Rowe, Gracie Rowe, Jessie Rowe, Riley Jordon, Nealus Moore, Kearney Manns, and probably others were present when the difficulty arose in which Moore was killed. Homer Trusty and Lee Jordon were walking down Hawes fork, near the home of Les Pitts, and met Kearney Manns and Nealus Moore. The evidence does not disclose how the difficulty started, but it appears that Lee Jordon struck Nealus Moore on the head with a pistol. Both Moore and Manns fired at Jordon, and Jordon was killed. About the same time Homer Trusty shot Moore in the back. Gracie Rowe was shot through the arm, and Homer Trusty was wounded in the chest. None of the witnesses was able to state who fired the shots that wounded Homer Trusty and Gracie Rowe.

Homer Trusty left immediately after the shooting, going down Hawes fork. A short distance from the scene of the killing, but around the point of a hill, he met his brother, the appellant, Dudley Trusty, who was walking up Hawes fork carrying a shotgun. He told his brother what had occurred and that he was wounded. Dudley Trusty walked to where Moore and Jordon were lying and fired his gun in the ground. According to some of the witnesses who were present, he also picked up a rock, but did not offer to throw it. Moore died shortly after he arrived. He then assisted others present in carrying Moore's body into the Pitts home.

Earlier in the day he was at the home of his father-in-law, Nero Manns, with a number of others, when Nealus Moore arrived. There is no evidence that he and Moore had any trouble on that occasion. Later in the day appellant and one or two others were on the porch of the home of Asa Manns, when Nealus Moore, in an apparently intoxicated condition, came into Asa Manns' yard. He was riding a mule and fired his pistol a number of times into the ground. Appellant walked into the house, got his shotgun and said: "That d—— s—— of a b—— can't put nothin' over on me." However, he placed the shotgun against the wall, and did not offer to shoot Moore, who was still in the yard. Moore soon left and went up Hawes fork. Fifteen or 20 minutes later appellant took his shotgun and started up the creek. It was then that he met his brother, Homer Trusty, who told

him that he had been wounded, and that Nealus Moore and Lee Jordon also had been shot.

Appellant was convicted under a conspiracy instruction. The only evidence relied upon by the commonwealth to show that he was a conspirator was the alleged threat made by him at the home of Asa Manns, and the fact that he arrived at the scene of the killing a few minutes after it occurred. Neither he nor his brother had had any difficulty with Moore before Moore stopped at the home of Asa Manns, and appellant did not see his brother, Homer Trusty, from that time until after the shooting occurred.

As said in Saylor v. Commonwealth, 158 Ky. 768, 166 S. W. 254, 256: ''The law in a criminal case requires that the guilt of the accused shall be established by the evidence to the exclusion of a reasonable doubt, and, where the evidence as a whole creates only a suspicion that the defendant might be guilty, there is nothing to submit to the jury.'' Here the evidence is not sufficient even to create a suspicion that appellant had conspired with any of his codefendants to kill the deceased. If this conviction could be upheld on the evidence adduced, then any other person who had been with Moore and Homer Trusty on that day, or who happened to appear at the scene of the killing a few minutes after it occurred, could likewise be convicted.

In Anderson v. Commonwealth, 196 Ky. 30, 244 S. W. 315, 317, in which the facts were even stronger as tending to show a conspiracy than in the instant case, the court said: ''It is the duty of courts, when called upon to review the proceedings wherein the defendant was convicted to satisfy themselves that the testimony as a whole was reasonably calculated to produce more than a mere suspicion, and to possess at least some convincing weight. This is as true in conspiracy cases as in any others, and we find in the text of 12 C. J. 638, this statement: 'On the other hand, conspiracies cannot be established by a mere suspicion, nor does evidence of mere relationship between the parties or association show a conspiracy.' That rule was recognized by this court in the cases of Pace v. Commonwealth, 170 Ky. 560, 186 S. W. 142, and Lockard v. Commonwealth, 193 Ky. 619, 237 S. W. 26. In each of those cases the evidence supporting the alleged conspiracy was as strong as that shown by this record, with the exception, perhaps, of one fact which will be subsequently noticed. Indeed, in the Pace

case the testimony, if anything, went farther towards establishing the conspiracy than is true in this case; yet in each of them we held that the evidence was insufficient, and that the testimony in support of the conspiracy charge did not authorize its submission to the jury.''

A careful reading of the record convinces us that there was no evidence tending to connect the appellant with the crime for which he was tried, and that the court erred in not sustaining his motion for a directed verdict. Wherefore the judgment is reversed, with directions to grant appellant a new trial and for further proceedings consistent herewith.