## Mills v. Commonwealth.

March 25, 1949.

Rehearing denied June 3, 1949.

Hiram H. Owens and G. L. Dickinson for appellant.

A. E. Funk, Attorney General, Zeb A. Stewart, Assistant Attorney General, and James Inman, Commonwealth's Attorney, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

John Mills, the appellant, has been sentenced to death for the murder of Millard Broughton on June 16, 1947. The grounds for reversal of the judgment are: (1) there was no evidence upon which to base the qualification of the self-defense instruction, and (2) prejudicial statements to the jury by a prosecuting officer.

It is a sufficient statement of the evidence to say that Mills had lived with Broughton and his family, which consisted of a wife and six children, the oldest of whom was twelve years of age, for about four months until the latter part of May, 1947. He then went to stay at the home of Mrs. America Simpson a few miles away. Mills was something of a wanderer in the mountains and usually carried his twenty-two rifle. There is evidence that he greatly coveted and desired Broughton's wife. He had said he was going to kill him so he could get his wife. One of the Simpson boys and Mills had planned to go to Ohio to work, and he expressed a purpose to take a "girl friend" with him. There is a bit of evidence that Broughton had run him away from his home. But a day or two before the killing Mills and Broughton were together at the home of Dave Elliott in the neighborhood, and there was no manifestation of unfriendliness. Mills testified Broughton asked him to come back and help take care of his family.

The afternoon on which the killing occurred Broughton and his wife were in their garden, or a field, planting corn. Other than the defendant's testimony we have only the circumstances and situation showing what may have occurred. The widow declined to testify on the ground of possible self-incrimination. The defendant's testimony is that he met Broughton in a path while on his way back to his boarding house and Broughton accused him of getting letters from his wife. Mills denied it except to say that he had received a friendly note from her asking him to come back there and board with them and that it did not mean anything. Thereupon, with an oath, Broughton assaulted him with rocks, and Mills shot and killed him in self-defense. The range of the two bullets tends to corroborate his story.

Mills testified that Broughton's wife was afraid to go home because, as she said, the Broughtons would think she had "killed my man" and they would kill her. She wanted to go with Mills, but he told her to go on home. She did go away with him, and they spent three days in the mountains, then went to Ohio, and later to Maine. Within a month the officers there learned from one or the other that Mills was wanted in Knox County for murder, and they communicated with the officers of

that county. They went to Maine and brought back the man and woman.

The court qualified the instruction on self-defense by a provision that, if the jury believed beyond a reasonable doubt that Mills had killed Broughton in pursuance of a conspiracy between h'm and Broughton's wife, the defendant was deprived of the right of self-defense. See Saylor v. Commonwealth, 210 Ky. 796, 276 S. W. 841; Stanley's Instructions to Juries, Sec. 869, Instruction 7.

We summarize the evidence which could possibly be regarded as supporting the theory of conspiracy. At some indefinite time wh'le Mills was staying with the Broughtons, Mrs. Broughton had said to her husband's mother that "If anything should happen to Millard, I would get the widow's help and I could raise my children." While at the Simpson home Mills had two notes in his possession and was seen to read one of them on the day or the day before the k'lling. He misplaced his pocketbook, and in the search, according to Mrs. Simpson, he had said "There was something in it about the Broughtons, or something for the Broughtons, I never paid any attention;" also "I wouldn't let them see it for a five-dollar bill or a ten-dollar bill, something or the other;" and further "that I wouldn't care so bad if that note hadn't been in there." Some explanation of the statement of the wife to her mother-in-law appears in the fact that her fam'ly was having a hard time and that her husband was either a shiftless, or a sick, man. They had made a trip to Barbourville to see about obtaining some public relief. The jury would have had to guess that the notes were from the woman and that they contained evidence of a plot or conspiracy to kill her husband. The defendant admitted receiving one note from the woman, and there is no contradiction of his testimony that it was merely asking him to come back and stay with them and help them out.

It was established through the woman's own family that at the t'me she fled with Mills she was wearing an old, soiled dress in which she had been working in the garden and that all of her better clothing was left at home. The defendant's story as to why she went with him may not be true, but the way she was dressed and

the circumstances rather negative the idea of a preconceived plan to kill her husband and go with Mills. Evidence of intimacy and affection of the pair on the way back from Maine does not establish any prior conspiracy. Their infatuation proves a strong motive on the part of the defendant to kill the husband in order to possess his wife, but that of itself does not prove she agreed with Mills to kill him. It would have been easy enough to have gone away without murdering him.

True it is that a conspiracy may be established by welding together a number of links to form a chain of circumstances. Gambrell v. Commonwealth, 130 Ky. 513, 113 S. W. 476. Even so, it seems to us that the suspicion that the notes were from the woman and contained evidence of a plan of some sort coupled with the fact of her abandonment of her little children and flight with the defendant is not reasonably sufficient or strong enough to afford an inference of the existence of a conspiracy to kill the husband. Lockard v. Commonwealth, 193 Ky. 619, 237 S. W. 26; Bowling v. Commonwealth, 196 Ky. 182, 244 S. W. 306; Anderson v. Commonwealth, 196 Ky. 30, 244 S. W. 315; Turner v. Commonwealth, 221 Ky. 330, 298 S. W. 959. We are of opinion that the evidence did not warrant the qualification of the self-defense instruction and that attaching it is a prejudicial error.

The opening statement of the case to the jury by the county attorney contains much that is objectionable and improper. The office of an opening statement by a prosecuting officer is to state the nature of the charge against the defendant "and the law and evidence upon which he relies in support of it." Sec. 220, Criminal Code. The statement is to prepare the minds of the jurors for the evidence to be heard. While reasonable latitude is recognized, the statement ought not to include facts which the prosecution does not in good faith expect to prove or evidence which is plainly inadmissible or a reference to anything that may tend to prejudice the defendant in the minds of the jury. Lickliter v. Commonwealth, 249 Ky. 95, 60 S. W. 2d 355. The Attorney General's office concedes the improprieties but submits that the error may have been cured by the court's admonitions. We do not pass upon the point that it was a

prejudicial error not to have sustained all of the defendant's objections and his motion to discharge the jury, since the judgment is reversed on the other ground. Being warned, counsel will doubtless not repeat the impropriety on another trial.

The judgment is reversed.

Judge Thomas dissenting.