## Neal et al. v. Commonwealth.

(Decided Oct. 14, 1932.)

SHUMATE & SHUMATE for appellants.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellants, Mid and Alvin Neal, were indicted together by the grand jury of Estill county, charged with the offense of feloniously breaking into the storehouse of A. G. Ruffner, and stealing therefrom lawful money of the United States to the amount of $795, and which is one of the offenses denounced by section 1164 of our Statutes. Upon their joint trial they were each convicted and punished by confinement in the penitentiary for a period of three years, and, from the order of court overruling their motion for a new trial and the judgment pronounced thereon, they prosecute this appeal, urging through their counsel a number of grounds for reversal, none of which do we consider material except the two chief ones argued in brief, and which are: (1) Error of the court in overruling the motion of defendants for a peremptory instruction of acquittal upon the ground that the testimony introduced by the commonwealth was insufficient to sustain a conviction; and (2) if mistaken in ground 1, then the verdict is flagrantly against the evidence. Those two grounds are so related that we have concluded to dispose of them together, and in doing so it will be necessary to make a brief resume of the testimony introduced by the commonwealth; the defendants not introducing any whatever.

Until a few days before the commission of the crime for which defendants were indicted, Ruffner, the owner of the store broken into, operated two separate ones in Ravenna or Irvine (the two towns adjoining), and a few days prior thereto he ceased to operate one of them. In each of them he ran a butcher shop requiring the services of a butcher. Defendant Mid Neal, for four months before the robbery, ran the butcher department in the store broken into, while another ran the same department in the abandoned store, and Ruffner had determined to continue the employment of the butcher formerly at the abandoned store, and for that reason relieved the defendant Mid Neal of the position he had theretofore occupied in the store that was burglarized, and which occurred on the Saturday before the store was broken into that night. A part of Mid Neal's duties was to clean the butcher counter after the business for the day had closed, and which was sometimes done immediately following the closing, without interruption for the evening meal, and at others he would

return to the store after that meal and perform that service.

Ruffner carried the keys to the store building, and on the same ring he also carried a key to a contrivance he had in the store, which is referred to in the record as a "combination filing register and money safe." In the latter attachment to that contrivance he sometimes deposited valuable papers as well as cash, and he would then lock it with the key. He had never before the day of the robbery so deposited cash in any greater amount than $150; but, according to the proof, the particular Saturday in question was a pay day for railroad employees in Ravenna, and it is testified to by Ruffner that from credit customers, together with cash sales paid into his store on that day, there was collected something near $800, $795 of which he put into the money safe attachment to the above-described contrivance, and locked it, putting the key in his pocket. He testified that when it was necessary for Mid Neal, his butcher in that store, to return to it after supper for the purpose hereinbefore mentioned, he (Ruffner) would deliver to the butcher his bunch of keys, among which was the key to the depository of the money. But the last time prior to the robbery that he did so was on the Monday night preceding the day of the crime, and that, so far as he knew (and about which he was quite positive), that Monday night was the last time that Mid Neal was in possession of the keys.

On the particular night in question Mid Neal and John Hamilton, another employee of Ruffner, did the cleaning referred to, and, when they left, they closed the store door, which fastened with a spring lock, but no one claims that they or either of them had any of Ruffner's keys in their possession at that time. On the contrary, it is expressly proven that they were then in his possession. The perpetrators of the crime gained entrance into the store by breaking the glass in one of its doors and Ruffner became aware of it the next morning, which was Sunday. However, on that occasion he did not unlock the depository of his money, but did do so on the following Monday morning, and discovered that it was gone. After leaving the store that night, Hamilton and the defendant, Mid Neal, separated, the former going to his home, and the latter stating at the time that he intended to do likewise.

Instead, however, of immediately doing so, he met his brother, Alvin, and they together went to the restaurant of M. H. Hieronymus, which was located about one hundred yards from the burglarized store, and which is the nearest point to the store that any testimony places either of the defendants on that night after Hamilton and Mid Neal left it. The proof showed that the employees of Ruffner, as well as others, were in the habit of gathering at that restaurant and, perhaps, eating something, and especially so on Saturday nights.

When Hamilton and Mid Neal separated, something was said about making a trip to Richmond together the next day, and in which Mid Neal remarked that it was his purpose to do so, and Hamilton expressed a like intention, but no definite arrangement was made that they should make that trip together, although they had done so on prior occasions, and usually it was made in the afternoon. Mid Neal did go from his home to Richmond on that Sunday, but, instead of making the trip with Hamilton, he made it with his brother, Alvin, on a bus leaving Irvine at an early hour. When they got to Richmond, they transferred to a bus going north. On Monday, the following day, Alvin Neal appeared in Dayton, Ohio, and purchased a secondhand Chrysler automobile at the price of $200, which he paid in cash. But there is no positive testimony that Mid Neal was with him on that occasion. On the following day (Tuesday) the two defendants were arrested in Burnside, Ky., having presumably driven there from Dayton, Ohio, in the Chrysler machine purchased by Alvin. When arrested, Alvin Neal had upon his person $10, and his brother had between $2 and $3, none of which was attempted to be identified as any part of the alleged stolen cash, nor was any of the money paid for the automobile attempted to be so identified. There was no testimony as to the occupation of Alvin Neal, nor whether he possessed or did not possess any property or had any income or, if one, how much.

However, it was proven by the commonwealth that some days before the burglary Alvin Neal was seen engaged in the making of a key from a model that he had in his possession, and that he then stated to the witness that he was making an additional key to his garage, and that testimony is not contradicted. But the witness did not describe the model key, or the one

that Alvin Neal was making, and the record is silent as to whether either of them bore any resemblance to, or corresponded in any manner with, either the key to Ruffner's storehouse or the one to the depository of his money. Ruffner gave Mid Neal a good name, but the character of Alvin Neal is not referred to in the testimony. We have recited all of the material facts to which the witnesses for the commonwealth testified and upon which the case was submitted to the jury, and a verdict of guilty was returned.

That one may be convicted on circumstantial evidence is thoroughly established in the law, and is admitted by counsel for defendants; but such testimony, in order to sustain a conviction, should be of such a convincing nature as to exclude any reasonable hypothesis of innocence. If the testimony does no more than create a suspicion or a probability of guilt by showing only an opportunity on the part of the accused to commit the crime, or goes no further than to generate a possibility that he did so, it is insufficient to authorize a conviction, and the court should direct a verdict of not guilty.

It is unnecessary that we catalogue all the cases supporting what we have just stated, since the rules of practice, as so outlined, are thoroughly established and administered by all courts including this one. One of the latest cases from this court so holding is that of Tarkaney v. Commonwealth, 240 Ky. 790, 43 S. W. (2d) 34, in which many prior domestic ones are collected.

In this case the thief who took the money from the place where it was deposited necessarily did so with the assistance of a key that would unlock the depository and would again lock it after the money was taken, since Ruffner found it locked and unbroken when he examined it. It is uncontradictedly proven that Mid Neal did not have the possession of that key after Monday evening preceding the burglary, and from that time on it was in the possession of Ruffner. On the night of the burglary, it is positively shown, not only that Mid Neal did not have that key (which was then in the possession of the owner of the deposited money), but also that the depository was not unlocked on that occasion or any money taken therefrom. The location of the two brothers on that night 100 yards from the burglarized store, according to the evidence, was nothing out of the ordinary, and the same may be said of

their trip to Richmond and from thence to some point north the next day, unless it had been shown that they were then fleeing from the scene of the burglary, but which is disproven, since a return was made to Kentucky the next day and they were arrested in Burnside, where they were not trying to secrete themselves, nor had they assumed false names. It should also be remembered that the proof fails to convincingly show that Mid Neal made the trip to Dayton, Ohio, with his brother, and the only fact upon which even a suspicion can be based is that Alvin Neal made the trip to Dayton, Ohio, to buy an automobile, and paid therefor $200 in cash; and which circumstance is not so unusual and beyond the ordinary course of human conduct as to render the fact of sufficient weight to sustain a conviction. It really does not create a suspicion of guilt when it is remembered that there is no testimony to show that he was so financially embarrassed as that he could not legally possess that amount of money. It might be asked: Why the trip to Dayton to purchase a secondhand automobile? But that question is susceptible to many innocent answers. It is not shown that there was any dealer in Irvine or Ravenna from whom he could make such a purchase, or, if there were one, that the difference in the price demanded by him for the same article would not justify the trip to Dayton; and we therefore repeat that the circumstance of his having done so falls far short of sufficient probative force to authorize the verdict of guilty.

Neither does the fact that he was making a key for his garage augment the one just discussed sufficiently to sustain the verdict, since that circumstance, explained as it was at the time and without the essential similarity of keys to which we have referred, has but little, if any, weight. Upon the whole, we unhesitatingly conclude that the court erred in overruling the motion of defendants for an instruction directing their acquittal, and that ground 1, supra, is well taken, and which also sustains ground 2.

Wherefore the judgment is reversed, with directions to sustain the motion for a new trial, and to set it aside for proceedings consistent with this opinion.