### ABRAMS v. COMMONWEALTH.

Court of Appeals of Kentucky.

Nov. 16, 1951.

E. R. Gregory, Bowling Green, for appellant.

A. E. Funk, Atty. Gen., H. D. Reed, Jr., Asst. Atty. Gen., for appellee.

CAMMACK, Chief Justice.

Johnny Abrams was convicted on a charge of burglary and sentenced to serve three years in the penitentiary. He urges as grounds for reversal that (1) the court erred in overruling his motion to dismiss the jury because the indictment was not read to the jury until after the Commonwealth had presented its evidence; (2) incompetent evidence was admitted over his objection; and (3) the court erred in refusing to direct a verdict in his favor.

Section 219 of the Criminal Code of Practice provides: "The clerk, or Commonwealth's attorney, shall then read to the jury the indictment, and state the defendant's plea." The preceding sections, 217, 218, provide for the swearing of the jury. It is the contention of Abrams that Section 219 is mandatory, and the failure to read the indictment until after the Commonwealth introduced its proof was reversible error. The same situation existed in the case of Galloway v. Commonwealth, 5 Ky. Law Rep. 213. There it was held that this omission was error, but, under the circumstances, because the jury had been fully apprised of the indictment and plea during the trial while it was still within the power of the court to recall any of the witnesses if either party desired to re-examine them, and the accused having made no motion to recall any of the witnesses, the substantial rights of the appellant had not been prejudiced. It is not necessary that we discuss this question further, since the judgment must be reversed on other grounds. In the event of another trial, the indictment and plea should be read at the time prescribed by Section 219.

On Sunday morning, May 28, 1950, it was discovered that the Bowling Green district office of the Gulf Refining Company had been broken into, a safe in the office "blown," and some of the contents of the safe carried away. The investigating officers, including Sheriff Paul Hodges, who testified at the trial, found in a thick coating of white dust on the office floor 15 or 20 footprints, one of which was so clear that the brand name (Florsheim) of the heel could be discerned. This heel print was measured in the presence of the sheriff by an officer who did not testify.

On the following Sunday morning, June 4, Abrams was arrested in Bowling Green on a wholly unrelated misdemeanor charge. A search of his person at the police station disclosed some dynamite caps and fuse in his wallet. He was wearing a pair of Florsheim shoes. When the heel of the left shoe was measured, again in the sheriff's presence, by the same officer who had measured the print on the office floor, the dimensions of the heel and the print were found to be the same. On the basis of this evidence Abrams was indicted and brought to trial.

Abrams contends that it was prejudicial error to permit the sheriff, who apparently had been in charge of the investigation of the crime, to give in testimony his opinion (1) of the method used to "blow" the safe; and (2) that the shoe of Abrams made the heel print on the office floor. He asserts that the former was mere guesswork because no facts were given on which to base this opinion. This is the testimony to which objection was made:

"Q. Now, Mr. Hodges, from your examination of this safe here at this place, the Gulf Refining Company, on the morning of May 28th, based on your experience, can you tell how access was gained to that particular safe? A. I think so.

"Q. Tell the jury how that was done. A. Well, they used an electric drill and drilled holes around the door and used nitroglycerin soap and a cap to blow it with.

"Q. What type of cap? A. Dynamite cap they call them,—a cap that gives off a 30 or 50 pound jar, whatever is necessary. (Objection: overruled: exception)

"Q. Did this safe appear to have been blown in that particular manner? A. Yes, sir, it sure did. That's the way it looked because there was holes drilled around it and from the looks of everything it was evidently blown."

We feel the sheriff's testimony concerning the appearance of the safe, its door, and "the looks of everything," when considered with his prior qualification as an expert in the field of investigation of crimes concerning "safe-cracking," made his opinion substantially more than mere conjecture, with a sufficient basis in fact and reason. As such, it was properly admitted as expert testimony. But this testimony, even when considered in connection with that about Abrams having dynamite caps and fuse on his person when he was arrested on June 4, would not sustain a verdict of guilty.

The competency of the opinion of the sheriff that Abrams' shoe made the print found at the scene of the crime is a matter of serious doubt. However, it is unnecessary to decide this question, for we feel that, assuming this testimony to be competent, and considering it at its full weight, the evidence would nevertheless be insufficient to establish the guilt of the appellant beyond a reasonable doubt. A conviction here would have to be based solely on circumstantial evidence. It has been held repeatedly that circumstantial evidence to sustain a conviction must be so unequivocal and incriminating as to exclude every reasonable hypothesis of innocence. Baird v. Commonwealth, 241 Ky. 795, 45 S.W.2d 466; Young v. Commonwealth, 245 Ky. 117, 53 S.W.2d 206; Neal v. Commonwealth, 245 Ky. 272, 53 S.W.2d 572. It has also been held that circumstantial evidence as reasonably consistent with innocence as with guilt is insufficient to sustain conviction. Bullock v. Commonwealth, 249 Ky. 1, 60 S.W.2d 108, 94 A.L.R. 407; Sloan v. Commonwealth, 258 Ky. 461, 80 S.W.2d 553; Helton v. Commonwealth, 242 Ky. 386, 46 S.W.2d 487.

The evidence against Abrams, even when viewed in the most favorable light for the Commonwealth, only establishes that seven days after the crime was committed he was wearing a popular brand of shoe, and had dynamite caps in his possession; that the perpetrator of the crime had worn the same brand of shoe, leaving at the scene a heel print, the dimensions of which equalled those of the heel of Abrams' left shoe; and that the safe had been "blown" by someone using a dynamite cap. It was not shown that there were any peculiar marks in the print and on the heel which would conclusively link them together, or which would disprove Abrams' contention that the print could have been made by any other person wearing a shoe of that brand and approximate size. The mere opinion of the sheriff, made without facts to support it, can not be sufficient to so connect them. There is nothing in the record to show that Abrams was in or near Bowling Green seven days before his arrest, or that he owned this pair of Florsheim shoes at that time, or that the dynamite caps in his possession were of the same size and make as that utilized by the guilty party.

In the case of Hays v. Commonwealth, 270 Ky. 561, 110 S.W.2d 279, 280, the only evidence against the accused was that an imprint made by one of his shoes was the same length and width as some tracks found leading away from a burned school building toward his home, and that bad feeling existed between him and the schoolteacher. We held that the evidence, purely circumstantial, was too meager to sustain the conviction. The opinion contains this statement: " * * * (the evidence) merely establishes that the imprint made by the shoe worn by appellant was the same length and width as the tracks found along a path leading in the general direction of appellant's home and, so far as the evidence discloses, there were no peculiar marks in the tracks made by appellant and those found near there leading from the schoolhouse to indicate that they were made by the same shoes, or that would distinguish them from a track made by any other shoe of the same number and pattern." See also the case of Davidson v. Commonwealth, 252 Ky. 354, 67 S.W.2d 486, 488, where the evidence against the accused was much more incriminating than in either the Hays case or the instant one. There the Court held: " * * * It (the evidence) does not establish appellants' guilt with reasonable certainty. It does not exclude every reasonable hypothesis of innocence. As a

whole it creates only a suspicion of guilt and a verdict of acquittal should have been directed."

It is our conclusion that the evidence, all circumstantial, points only a finger of suspicion to Abrams. Because the Commonwealth failed to establish his guilt with any reasonable certainty, the court should have directed a verdict in his favor.

The judgment is reversed. If, upon another trial of the case, the evidence is substantially the same, the court should direct the jury to find a verdict of acquittal.